WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sophia Lewis, | No. CV-24-03370-PHX-DWL |
| Plaintiff, | **ORDER** |
| v. | |
| American Express Company, | |
| Defendant. | |

Between December 2019 and August 2020, Plaintiff Sophia Lewis ("Lewis") filed two administrative complaints with the United States Department of Labor, Occupational Safety and Health Administration ("OSHA") against her employer, American Express Company ("Amex"), alleging whistleblower discrimination. Over four years later, on November 26, 2024, while the resulting administrative proceedings were still ongoing, Lewis filed this *de novo* action under the "kick-out" provision of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley" or "SOX") alleging the same whistleblower claims.

Now pending before the Court is Amex's motion to dismiss those claims as untimely pursuant to the four-year statute of limitations provided in 28 U.S.C. § 1658(a). For the reasons that follow, Amex's motion is denied.

**BACKGROUND**

I.   Factual Allegations

The following facts, presumed true, are derived from the Complaint (Doc. 1) and the documents as to which the Court has already taken judicial notice (Doc. 22).

1    In 2014, Lewis was hired by Amex as "a Business Consultant in the credit card
2    division's CAG MMS unit in Phoenix, Arizona." (Doc. 1 ¶ 14.)

3    In 2017, Lewis "was promoted to Senior Manager in MMS, supervising one of two
4    MMS-focused teams consisting of ten Business Consultants." (*Id.* ¶ 15.) That same year,
5    Lewis's team received awards for "Top Team Activation" and "Highest Team Spend," and
6    in 2018, Lewis received the "Tribute Award based on her team's nomination." (*Id.* ¶ 16.)
7    Between 2014 and 2018, Lewis received the performance rating of "outperforming," and
8    in 2018 Lewis received the highest rating "of "role model." (*Id.* ¶ 17.)

9    Starting in 2018, Lewis began to make certain disclosures detailing alleged
10   company misconduct. (*Id.* ¶¶ 23-55.) For example, "[i]n early 2018, [Lewis] learned from
11   her team and company colleagues that CAG salespeople on another team [led by Senior
12   Manager Wiley King] were receiving large commissions for opening MMS business card
13   accounts for companies with less than $4 million in revenues, in violation of strict company
14   requirements," and Lewis "reported [that] misconduct to AmEx management, including
15   Director Maryam Biglou-Enders." (*Id.*¶¶ 24-26.) "Due at least in part to [Lewis's]
16   disclosures and the subsequent investigation, [Amex] changed its formula for awarding
17   commissions to MMS teams, ostensibly to discourage further gaming of the compensation
18   system." (*Id.* ¶ 27.) Nevertheless, "Amex took no disciplinary action against King,"
19   "promoted [him] to Director while the misconduct investigation was still underway," and
20   "[t]he fraudulent practices continued." (*Id.* ¶¶ 28-29.)

21   On June 7, 2019, Lewis met with Amex's "General Counsel Office staff, Senior
22   Counsel Shawn Hynes and disclosed that King was continuing to condone wrongful sales
23   practices generating large commissions for his team" and "warned Hynes that she feared
24   discrimination or retaliation from King for reporting his misconduct." (*Id.* ¶ 30.)

25   On June 12, 2019, Lewis "told Hynes and GCO paralegal Judith Devieux that she
26   had reported her concerns about King as well as previous retaliation previously to HR's
27   Michelle Lloyd and Jeanne Stout." (*Id.* ¶ 31.)

28   On June 26, 2019, Lewis reiterated her concerns about retaliation for her disclosures

and "also disclosed a conflict of interest in that King's brother-in law also worked in the Middle Market segment where King was now director," in violation of Amex's policy against family members working under other family members. (*Id.* ¶ 32.)

On September 7, 2019, Lewis "sent an email to [Amex] attorney Hynes and HR Stephanie Howard, who reported to Stout, stating that she was reaching out to file a formal complaint of harassment, targeting, and bullying by King, stating: 'Ever since I advised HR of [King's] illegal practices for financial gain and now that he has become my direct leader, he has made it his mission to harass and target me.'" (*Id.* ¶ 34.)

On September 26, 2019, Lewis "filed a detailed complaint through [Amex's] ethics hotline, EthicsPoint, documenting the ongoing sales practice violations, discrimination and retaliation." (*Id.* ¶ 35.)

On October 16, 2019, Lewis "met with Julie D. Tomich, CAG Senior Vice President and General Manager, to disclose the continuing deceptive practices causing AmEx to improperly pay commissions to salespeople who opened MMS accounts without required revenue verification documentation for businesses below the $4 million threshold." (*Id.* ¶ 38.) The next day, on October 17, 2019, Lewis "provided detailed information identifying twelve recently opened problematic MMS accounts." (*Id.* ¶ 39.)

On October 30, 2019, Lewis "sent a follow-up email to Tomich and four other managers identifying fourteen additional problematic accounts." (*Id.* ¶ 40.)

On November 1, 2019, Lewis received confirmation that "her concerns had been referred to [Amex's] Internal Auditing Group (IAG) for review." (*Id.* ¶ 44.)

On December 10, 2019, Lewis "filed an OSHA complaint regarding her protected disclosures described above and reporting her discrimination and retaliation concerns." (*Id.* ¶ 48.) In support of this complaint, "[t]o preserve evidence of the fraudulent practices and management's knowledge of them, to protect the integrity of the information, as well as secure evidence to provide to federal regulators, [Lewis] forwarded key emails [documenting Amex's misconduct] to her personal account." (*Id.* ¶ 50.)

"After [Lewis] began making protected disclosures in 2018 and continuing through

2020, AmEx subjected her to increasingly severe adverse actions." (*Id.* ¶ 56.) Such actions included denying her a promotion, suspending her for forwarding company emails to her personal account, giving her "the lowest possible annual leadership rating (L4) for 2019, despite her receiving the highest possible rating (L1) the year before," and terminating her employment on August 20, 2020. (*Id.* ¶¶ 57-62.)

II. Procedural History

On December 10, 2019, Lewis filed her first complaint ("First Administrative Complaint") with OSHA. (*Id.* ¶¶ 4, 48.) In it, Lewis alleged that "[o]n or about June 20, 2019, Ms. Lewis was denied a promotion and on or about November 12, 2019, she was disciplined in retaliation for her complaints about employees submitting applications for corporate credit card accounts for customers that did not meet qualifications and using false signatures and false financial information on corporate credit card applications. Ms. Lewis also contends that she has been subjected to harassment and intimidation because of her complaints." (*Id.* ¶ 48.)

On August 13, 2020, OSHA dismissed the First Administrative Complaint. (*Id.* ¶ 4.)[1] As part of its dismissal, OSHA stated that "Respondent and Complainant have 30 days from the receipt of these Findings to file objections and to request a hearing before an Administrative Law Judge (ALJ). If no objections are filed, these Findings will become final and not subject to court review." (Doc. 11-1 at 2.) Neither party filed objections or requested a hearing within this 30-day period.

On August 24, 2020, Lewis filed her second complaint ("Second Administrative Complaint"), alleging that Amex terminated her employment in retaliation for the substance of her allegations in the First Administrative Complaint. (*Id.* at 24.)

On January 26, 2023, OSHA dismissed the Second Administrative Complaint. (Doc. 11-1 at 26-27.) OSHA again informed the parties that they had 30 days in which to file objections and to request a hearing before an ALJ. (*Id.* at 27.)

---

[1] Lewis clarifies that OSHA dismissed her First Administrative Complaint "at the request of Complainant, who asked OSHA to terminate its investigation and issue a determination so she could proceed to a hearing before the ALJ." (Doc. 1 ¶ 4.)

- 4 -

On February 10, 2023, Lewis filed objections to OSHA's dismissal of both the First and Second Administrative Complaints and requested a hearing before an ALJ for the Department of Labor. (*Id.* at 5.)

Between February 15, 2024, and April 10, 2024, the parties had a four-day evidentiary hearing on Lewis's Administrative Complaints. (Doc. 11-1 at 30.)

On August 8, 2024, the ALJ denied Lewis's Administrative Complaints, finding that Lewis had not engaged in protected activity. (Doc. 1 ¶ 6; Doc. 11-1 at 29-123.)

On August 12, 2024, Lewis filed a petition for review of the ALJ's decision with the Department of Labor Administrative Review Board ("ARB"). (Doc. 11-1 at 125-31.)

On August 26, 2024, the ARB issued a notice of appeal acceptance and briefing order. (*Id.* at 133-39.) As part of that order, the ARB instructed Lewis to file her opening brief by September 23, 2024. (*Id.* at 136.) The parties twice filed a stipulated motion requesting an extension of time, both of which the ARB granted, resulting in a new deadline of November 4, 2024. (*Id.* at 141-45.)

On November 4, 2024, instead of filing the opening brief, Lewis filed a notice of intent to file a *de novo* action in U.S. District Court. (*Id.* at 147-48.)

On November 12, 2024, the ARB ordered Lewis to "either file a file-stamped copy of a district court complaint pursuant to 29 C.F.R. § 1980.114, or to file an opening brief in this appeal, within fourteen calendar (14) days of the date of this Order." (*Id.* at 150-52.)

On November 26, 2024, Lewis filed the Complaint. (Doc. 1.)[2] The Complaint asserts claims of whistleblower discrimination in violation of 18 U.S.C. § 1514A(a)(1)-(2) of Sarbanes-Oxley. (*Id.* ¶¶ 66-96.) In particular, the Complaint alleges that Amex engaged in "Fraudulent Commission Practices," "Violations of Corporate Card Application Practices," "Managerial Approval of Non-Compliant Applications Practices," "Systematic Bypass of Financial Verification Standards Practices," and "Misuse of Internal Resources

---

[2] The Complaint was thus filed nearly five years after Lewis's filing of the First Administrative Complaint and more than four years after Lewis's termination and after Lewis's filing of the Second Administrative Complaint.

- 5 -

to Facilitate Fraud Practices" and that Lewis engaged in "protected activity" by reporting such conduct to her superiors, which reporting "was a contributing factor in [Amex's] above referenced adverse actions against her." (*Id.*)

On February 3, 2025, Amex filed the pending motion to dismiss for failure to state a claim. (Doc. 9.) Also on February 3, 2025, Amex filed a motion for judicial notice, seeking judicial notice of a litany of administrative documents denominated as Exhibits A-N because they are "incorporated into [Lewis's] Complaint by reference and because the Complaint necessarily relies on them" and "because they are official government agency documents and filings that are not subject to reasonable dispute." (Doc. 11 at 1-4.)

On March 24, 2025, both motions became fully briefed. (Docs. 15, 16.)[3]

Also on March 24, 2025, Amex filed a document entitled "SUPPLEMENT Authority to Its Motion for Judicial Notice in Support of Its Reply to Motion to Dismiss Plaintiff's Complaint." (Doc. 17.) In that filing, Amex sought judicial notice of two briefs,[4] entitled Exhibits O and P, that were filed in unrelated cases. (*Id.*)

On March 31, 2025, Lewis filed a motion to strike Amex's new arguments and evidence or in the alternative for leave to file a sur-reply. (Doc. 18.)

On June 30, 2025, the Court issued an order granting Amex's requests for judicial notice and denying Lewis's motion to strike or, in the alternative, for leave to file a sur-reply. (Doc. 22.)

**DISCUSSION**

I.   <u>Legal Standard</u>

Under Rule 12(b)(6), "to survive a motion to dismiss, a party must allege sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *In re*

---

[3]   The parties' requests for oral argument are denied because the issues are fully briefed and argument would not aid the decisional process. *See* LRCiv 7.2(f).

[4]   Those briefs are Exhibit O: Brief of Appellee Andrea Gail Jones, *Jones v. Southpeak Interactive Corp. of Del.*, 777 F.3d 658 (4th Cir. 2015) (No. 13-2399), 2014 WL 2115956 and Exhibit P: Memorandum of Points and Authorities in Support of Defendant Department of Labor's Motion to Dismiss, or, in the Alternative, for Summary Judgment, *Moldauer v. Constellation Brands Inc.*, 87 F. Supp. 3d 148 (D.D.C. 2015) (No. 1:14-cv-01984 (CRC)), 2015 WL 5885582.

*Fitness Holdings Int'l, Inc.*, 714 F.3d 1141, 1144 (9th Cir. 2013) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). When evaluating a Rule 12(b)(6) motion, "all well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." *Id.* at 1144-45 (quoting *Iqbal*, 656 U.S. at 678). However, the court need not accept legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678-80. Moreover, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678. The court also may dismiss due to "a lack of a cognizable legal theory." *Mollett v. Netflix, Inc.*, 795 F.3d 1062, 1065 (9th Cir. 2015) (citation omitted).

II. <u>Statute Of Limitations</u>

A statute-of-limitations defense may be raised by a motion to dismiss if the running of the statute is apparent on the face of the complaint. *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980); *ASARCO, LLC v. Union Pac. R.R. Co.*, 765 F.3d 999, 1004 (9th Cir. 2014) ("Dismissal under Rule 12(b)(6) on the basis of an affirmative defense is proper only if the defendant shows some obvious bar to securing relief on the face of the complaint."). Thus, "[a] motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Ortega v. Santa Clara Cnty. Jail*, 2021 WL 5855066, *1 (9th Cir. 2021) (quoting *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995). *See also Jablon*, 614 F.2d at 682 (same).

A. **The Parties' Arguments**

Amex contends that Lewis's claims, which accrued at the latest when Lewis was terminated on August 20, 2020, should be dismissed as untimely. (Doc. 9 at 4-7.) Amex argues that although "SOX's whistleblower provision provides a statute of limitations of

- 7 -

1    180 days for 'filing a complaint with the Secretary of Labor' (i.e. an administrative
2    complaint)," "[b]ecause SOX does not provide a time limitation for filing a *de novo* action
3    in district court, 28 U.S.C. § 1658, the federal 'catch-all' statute of limitations applies."
4    (Doc. 9 at 5.)  In support, Amex relies on *Jones v. Southpeak Interactive Corp. of Delaware*,
5    777 F.3d 658 (4th Cir. 2015), and other cases, including one from the Central District of
6    California.  (Doc. 9 at 5-7.)

7          In response, Lewis contends that because SOX "has its own statute of limitations
8    set forth in the plain language of the statute," § 1658(a)'s four-year limitations period is
9    inapplicable.  (Doc. 15 at 3-10, capitalization omitted.)  In support, Lewis cites *Despain v.*
10   *BNSF Ry. Co.*, 186 F. Supp. 3d 988 (D. Ariz. 2016), and *Jordan v. Sprint Nextel Corp.*, 3
11   F. Supp. 3d 917 (D. Kan. 2014).  (Doc. 15 at 6-10.)  Lewis further argues that Amex's cited
12   cases are irrelevant or inapplicable for a variety of reasons.  (*Id.* at 10-14.)

13         In reply, Amex reiterates its contention that § 1658(a) applies to Lewis's claims but
14   expands on that contention by arguing that "[the SOX limitations statute] should be read
15   in accord with other similar employment discrimination statutes like Title VII and ACRA
16   [Arizona Civil Rights Act] so that a separate limitations period—namely, Section 1658(a)'s
17   four-year default statute of limitation—applies to filings in court."  (Doc. 16 at 1-3.)  Amex
18   further argues that "[Lewis's] view that there is no statute of limitations for filing in district
19   court provided a plaintiff has satisfied the limitations period for filing a complaint with the
20   Secretary should also be rejected because applying a single administrative statute of
21   limitations to both SOX claims filed with the DOL and in court would lead to an absurd
22   result"—"[n]amely, if [Lewis's] interpretation of the statute were adopted, a plaintiff
23   would be free to commence her claim de novo in federal court for an indefinite period of
24   time after the accrual of her claim as long as she first filed her claim with the Secretary of
25   Labor within 180 days."  (*Id.* at 3-4.)  Amex further argues that *Despain* is "legally and
26   factually distinguishable" and, nevertheless, not binding on the Court and that *Jordan* does
27   not compel Lewis's desired outcome.  (*Id.* at 5-7.)  Last, Amex responds to Lewis's
28   attempts to distinguish Amex's cited cases.  (*Id.* at 7-10.)

B.     **Analysis**

The default federal statute of limitations is set by 28 U.S.C. § 1658(a), which provides:

> *Except as otherwise provided by law*, a civil action arising under an Act of Congress enacted after [December 1, 1990] may not be commenced later than 4 years after the cause of action accrues.

*Id.* (emphasis added). This provision functions as "a catchall 4-year statute of limitations for actions arising under federal statutes enacted after December 1, 1990." *Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 371 (2004).

Sarbanes-Oxley, enacted in 2002, makes it illegal for publicly traded companies to retaliate against employees who report potentially unlawful conduct. 18 U.S.C. § 1514A(a). To file a Sarbanes-Oxley whistleblower claim in federal court, a plaintiff must first file an administrative complaint with the Secretary of Labor. *Id.* § 1514A(b)(1)(A). For the administrative complaint to be timely, it must be filed "not later than 180 days after the date on which the violation occurs, or after the date on which the employee became aware of the violation." *Id.* § 1514A(b)(2)(D). Additionally, if "the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant," the complainant may "bring[] an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy." *Id.* § 1514A(b)(1)(B). This type of provision is sometimes referred to as a "kick-out" provision. *Despain*, 186 F. Supp. 3d at 992 ("In particular, the kick-out provision creates a 'safety valve' to ensure that claims brought within the Department of Labor are processed within a reasonable time."). Sarbanes-Oxley does not set forth any additional limitations period within which the *de novo* action must be brought in federal court.

The parties' dispute ultimately turns on how to conceptualize Sarbanes-Oxley's treatment of these timing issues. According to Amex, because Sarbanes-Oxley does not create a specific limitations period governing kick-out actions, it follows that § 1658(a)

- 9 -

applies to fill the void.  Meanwhile, Lewis argues that although Sarbanes-Oxley does not set a hard-and-fast deadline measured in a particular period of months or years for filing a kick-out action, it still effectively sets a limitations period—the complainant must file an administrative complaint within 180 days of certain developments, and if the ensuing administrative process takes too long (*i.e.*, more than 180 days after filing the administrative complaint), the complainant may file a kick-out action at any point during the period of excessive delay (so long as the administrative process still remains pending at that time and the delay is not due to the complainant's bad faith).  The Ninth Circuit has not directly addressed this issue and each side cites non-binding cases that reach contradictory conclusions.

The two cases on which Lewis relies are *Jordan* and *Despain*.  In *Jordan*, the plaintiff timely filed three administrative complaints with OSHA—the first in 2005, the second in 2006, and the third in 2010.  3 F. Supp. 3d at 923.  The ALJ then consolidated all of the complaints into one proceeding.  *Id.*  In 2010, the ALJ dismissed the second and third complaints, and the plaintiff petitioned the ARB for review.  *Id.* at 923-24.  In 2012, while that review was still pending, the plaintiff sought *de novo* review of the first complaint in federal court.  *Id.* at 924.  The defendants argued the federal action was subject to the four-year limitations period provided in § 1658(a) and was therefore untimely.  *Id.* at 925.  The court disagreed, holding that although "it would appear that § 1658(a) could be applicable to Plaintiff's cause of action," "Section 1658(a) . . . also states that it is applicable *except as otherwise provided by law*" and "[t]he law is otherwise provided for in § 1514A" because "Section 1514A sets forth a statute of limitations."  *Id.* at 927.  The court concluded that because the plaintiff had filed within the limitations period specified in § 1514A(b)(2)(D) and because § 1514A(b)(1)(B) imposed only two additional requirements for a plaintiff to seek *de novo* review of a timely filed SOX claim—namely, that "(1) a final decision was not issued within 180 days of the filing of the complaint, and (2) the delay was not due to the claimant's bad faith," both of which the plaintiff satisfied— the claim was not barred by § 1658(a).  *Id.* at 928.

Similarly, in *Despain*, a plaintiff timely filed an administrative complaint with the Secretary of Labor against his employer, alleging whistleblower retaliation in violation of the Federal Railroad Safety Act ("FRSA").[5] 186 F. Supp. at 989. After five years, the Secretary had yet to reach a final decision, so Despain filed a *de novo* action in federal district court pursuant to the FRSA's kick-out provision, which permits a plaintiff to file such an action where the Secretary has not reached a final decision within 210 days. *Id.* The employer moved to dismiss, arguing that although Despain had timely filed his administrative complaint, his *de novo* action was nevertheless time-barred under § 1658(a). *Id.* at 993. The court disagreed, holding that § 1658(a) does not apply to *de novo* actions brought under the FRSA. *Id*. The court explained that "[b]ecause the action is substantively the same whether in the agency or in court, only one limitations period applies: the 180-day period governing the employee's initial filing." *Id.* at 994. The court rooted this conclusion in the underlying purposes of statutes of limitations, which are "to assure fairness to defendants," to "promote justice by preventing surprises through the revival of claims that have been allowed to slumber until evidence has been lost," and to free courts of "the burden of trying stale claims when a plaintiff has slept on his rights"— none of which, the court concluded, apply to situations such as Despain's where the agency is responsible for the delay. *Id.* The court added that "[i]t is nonsensical to infer, from a different statute, that *more* agency delay somehow defeats the reassignment" of a plaintiff's claims to federal district court. *Id.* Finally, the court explained that even if *de novo* actions are meaningfully distinct from the related administrative actions, "such actions still would not be governed by the federal catch-all limitation, for two related reasons." *Id.* at 995. The court elaborated:

> First, actions under the kick-out provision do not need a limitations period because they are available as long as the conduct that occasions them continues. The provision authorizes employees to transfer their complaint to district court in the event of agency delay. Under this authorization, the

---

[5] Although *Despain* did not involve a SOX claim, the kick-out provision in the FRSA whistleblower statute is similar to SOX's kick-out provision. *Despain*, 186 F. Supp. 3d at 995 (referring to SOX's kick-out provision as "very similar to the one at issue here").

- 11 -

> action can be brought as long as the targeted harm persists, that is, as long as the agency delays. Thus, the action expires only with passage of the harm, not with passage of time. This is analogous to the equitable doctrine that, in some contexts, a statute of limitations does not run against a claim as long as the actionable harm continues.
>
> Second, to the extent that actions under the kick-out provision need a separate limitations period, the provision itself provides a natural time limit. Such actions are timely only as long as the Secretary "has not issued a final decision." Once the Secretary reaches a final decision, the employee's right to de novo review in district court expires. This literal time limit tracks rather than defeats Congress's remedy for delayed agency proceedings. The remedy ends when the need ends and not before.

*Id.* (cleaned up).

The Court finds both cases persuasive. As both *Despain* and *Jordan* emphasize, § 1658(a) applies "except as otherwise provided by law." SOX (like FRSA) contains a 180-day limitations period within which a plaintiff must file an administrative complaint. As *Despain* and *Jordan* correctly note, this 180-day limitations period constitutes a limitations period "provided by law," such that § 1658(a) does not apply. And as for Amex's contention that adopting this interpretation "would lead to [the] absurd result" of effectively eliminating any limitations period for SOX kick-out claims, Amex ignores that SOX contains a built-in failsafe, whereby the right to file a *de novo* action in federal court terminates as soon as the Secretary reaches a final decision. As *Despain* explains, this natural limit "tracks rather than defeats Congress's remedy for delayed agency proceedings. The remedy ends when the need ends and not before." 186 F. Supp. 3d at 995. The structure of § 1514A thus creates a natural limitation on when a plaintiff can file suit in federal court.

Amex argues that *Despain* is distinguishable because the Secretary in that case took five years to conduct his investigation into the plaintiff's claims, making the delay the fault of the Secretary, whereas Lewis was the one responsible for the delay here and "there [was] no administrative delay that carried the case beyond the four-year statute of limitations." (Doc. 16 at 5-6.)[6] This argument is unavailing. The bottom line is that SOX creates a

---
[6] Amex doesn't appear to attempt to distinguish *Jordan* but merely argues *Jordan*

limitations period for kick-out actions. Although this limitations period may be a bit unusual—whereas most federal statutes require an action to be initiated in federal court within a discrete number of months or years, SOX only creates a discrete time limit for the initial filing of the administrative complaint and makes the time limit for filing an ensuing kick-out action contingent on the timing of the resulting administrative process—it is still a limitations period. As a result, § 1658(a) is, by its own terms, inapplicable—it only exists to fill gaps "except as otherwise provided by law." Given this conclusion, it is unnecessary to engage in some sort of factual inquiry into whether Lewis was at fault for the delay in the administrative process in her case or whether the administrative process could have been concluded more quickly but-for her conduct.[7] Alternatively, even if the statute-of-limitations analysis could somehow turn on such a factual inquiry, Amex ignores that a statute-of-limitations defense may be raised by a motion to dismiss only if the running of the statute is apparent on the face of the complaint. *Jablon*, 614 F.2d at 682; *Ortega* 2021 WL 5855066 at *1. It is not apparent on the face of the complaint that Lewis engaged in impermissible delay tactics that caused the administrative proceedings to last for more than four years. Lewis filed her Second Administrative Complaint on August 24, 2020, but OSHA did not dismiss it until January 26, 2023—two years, five months, and two days later. Moreover, as Lewis emphasizes, Amex contributed nearly two additional months to the delay by stipulating twice to a joint motion for extension of time.

Nor does *Jones* compel a ruling in Amex's favor. There, the plaintiff timely filed an administrative complaint with OSHA, and then, after 180 days without a final decision from the Secretary, informed OSHA and her employer that she intended to file a *de novo* action in federal court. *Jones*, 777 F.3d at 663-64. However, the plaintiff waited nearly two years before doing so. *Id.* at 664. The employer moved to dismiss, arguing that two-year limitations period set forth in § 1658(b)—as opposed to the four-year limitations

---

was incorrectly decided. (Doc. 16 at 7.) For the reasons outlined in this order, the Court disagrees.

[7] Such an inquiry might be required in a case where the defendant argued the delay was "due to the bad faith of the claimant," 28 U.S.C. § 1514A(b)(1)(B), but Amex does not raise such a bad-faith argument here.

period set forth in § 1658(a)—applied to the plaintiff's lawsuit because it "involve[d] a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws." *Id.* at 666-68. The district court disagreed, holding "that the Sarbanes-Oxley Act claims were timely because the suit commenced within the four-year time limit set forth in 28 U.S.C. § 1658(a)." *Id.* at 666. The Fourth Circuit affirmed, concluding that § 1658(b) did not apply, that "Section 1658(a) controls," and that "because Appellee brought her suit within that section's four-year window, her claim is not barred." *Id.*

Although Amex understandably views the statement in *Jones* that "Section 1658(a) controls" as supporting its position here, the Fourth Circuit did not discuss whether SOX itself might supply a limitations period that is potentially even longer than the four-year limitations period created by § 1658(a). Rather, *Jones* seemed to frame the issue as binary, with the defendant arguing that the two-year limitations period in § 1658(b) applied and the plaintiff arguing that the four-year limitations period in § 1658(a) applied, and adopted the plaintiff's position. *See Despain*, 186 F. Supp. 3d at 996 ("[T]he parties [in *Jones*] framed the question as whether § 1658(b)(1) applied. The court treated the question as the parties posed it: whether the four-year limitation of § 1658(a) or the two-year limitation of § 1658(b)(1) applied, not whether § 1658 applied at all."). These details provide a reason why *Jones* should not be construed as necessarily rejecting the conclusions reached in *Jordan*, *Despain*, and this order. *See generally Webster v. Fall*, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents."); *Sloan v. State Farm Mut. Auto. Ins. Co.*, 360 F.3d 1220, 1231 (10th Cir. 2004) ("[C]ases are not authority for propositions not considered.") (internal quotation marks omitted).[8] At any rate, *Jones* is not binding in the Ninth Circuit and, for the reasons

---

[8] Amex argues that "a review of the briefing in *Jones* reveals that the issue of whether only the 180-day statute of limitations period applied to de novo actions was raised by the parties in discussing *Jordan*, and thus, was necessarily rejected by *Jones*." (Doc. 16 at 8.) The Court respectfully disagrees for the reasons stated above. The Fourth Circuit's decision does not cite *Jordan* and does not acknowledge the possibility that SOX creates its own limitations period for kick-out actions, and it was unnecessary for the court to

stated elsewhere in this order, the Court finds *Jordan* and *Despain* more persuasive.

Amex's other cited cases are unavailing for similar reasons. Several contain only a single sentence citing *Jones* with, at best, vague suggestions of agreement or speculation about possible outer limits on a plaintiff's ability to seek *de novo* review in federal court. *Harmon v. Intelligrated*, 2024 WL 4117026, *5 (6th Cir. 2024) ("Citing [*Jones*], Harmon argues that a four-year statute of limitations applies to her SOX claim. But the plaintiff in that case filed a timely complaint with the Department of Labor, thereby exhausting her administrative remedies. The four-year period discussed in *Jones* was the limitations period for filing a SOX retaliatory-discharge claim in federal court, not the 180-day period for filing an administrative complaint; the latter was the threshold stumbling block for Harmon.") (cleaned up); *Vuoncino v. Forterra, Inc.*, 2024 WL 967846, *7 (N.D. Tex. 2024) (noting that the plaintiff "no longer advances [the] argument" that "there is no statute of limitations for SOX retaliation claims except the statute of limitations for administrative proceedings" and then suggesting, in dicta, that this outcome would be "curious"); *Pittman v. Cedars-Sinai Med. Ctr.*, 2015 WL 13857137, *2 (C.D. Cal. 2015) (stating that "Pittman's [SOX claim is] *at most*, subject to a four-year statute of limitations," and citing *Jones* for authority) (emphasis added); *Bogenschneider v. Kimberly Clark Glob. Sales, LLC*, 2015 WL 796672, *2 (W.D. Wis. 2015) ("At some point, a plaintiff could run into a problem with the statute of limitations, *e.g.*, [citing *Jones*], but defendants have not raised a statute of limitations argument.").

Last, the Court is unpersuaded by Amex's analogy to Title VII and ACRA. Amex argues that Title VII and ACRA are "similar" anti-discrimination statutory schemes and, because those statutes provide "for separate statute[s] of limitations for claims filed with an administrative agency and in court," the Court should read Sarbanes-Oxley "in accord" with those statutes and apply § 1658(a). As an initial matter, Amex exaggerates the similarity between the statutory schemes. Title VII and ACRA, like Sarbanes-Oxley,

---

address those issues given that the plaintiff would prevail if § 1658(a) were deemed applicable.

- 15 -

require a complainant to file an administrative complaint with the relevant agency within a specified timeline. But unlike in Sarbanes-Oxley, the relevant agencies handling Title VII and ACRA claims must authorize the complainant to file a subsequent lawsuit, and such authorization is often provided at the conclusion of the agency's investigation. *See, e.g., Scott v. Gino Morena Enterprises, LLC*, 888 F.3d 1101, 1106-08 (9th Cir. 2018) (noting that "[t]here are effectively two limitations periods for Title VII claims," the first being that "a claimant must exhaust administrative remedies by filing a charge with the EEOC or an equivalent state agency . . . and receiving a right-to-sue letter" and the second being that "after exhausting administrative remedies, a claimant has 90 days to file a civil action," and that the EEOC's "duty to give notice [of the right to sue] is triggered in two instances: (1) the EEOC's dismissal of the administrative charge, or (2) the EEOC's failure to file a civil action or enter a conciliation agreement within 180 days from the filing of the charge"). Thus, it makes sense in those contexts to create a separate limitations period in which the complainant must file suit in federal court after receiving authorization to do so—otherwise, there would be no limit at all. Not so with § 1514A claims. This difference renders Amex's analogy inapt. In any event, the analogy also fails for the more fundamental reason that § 1658(a) is, on its face, inapplicable where Congress "provided otherwise by law." As discussed above, Congress has "provided otherwise," albeit in a somewhat unusual fashion, in Sarbanes-Oxley.[9]

Accordingly,

**IT IS ORDERED** that Amex's motion to dismiss (Doc. 9) is **denied.**

Dated this 11th day of July, 2025.

Dominic W. Lanza
United States District Judge

---

[9] The conclusion that § 1658(a) is inapplicable makes it unnecessary to address the parties' arguments regarding equitable tolling.