**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

Sophia Lewis,

          Plaintiff,

v.

American Express Company,

          Defendant.

No. CV-24-03370-PHX-DWL

**ORDER**

In advance of the motion hearing on November 4, 2025, the Court wishes to provide the parties with its tentative ruling. The point of providing it beforehand is to streamline oral argument and enhance the parties' ability to address any perceived errors in the Court's tentative analysis. This is not an invitation to submit additional evidence or briefing. Also, if the parties jointly agree, after reviewing the tentative ruling, that oral argument is unnecessary, they may file a stipulation to vacate oral argument and issue a final order based on the tentative ruling.

Dated this 24th day of October, 2025.

_____
Dominic W. Lanza
United States District Judge

TENTATIVE RULING

In December 2019, Plaintiff Sophia Lewis ("Lewis") filed an administrative complaint with the United States Department of Labor, Occupational Safety and Health Administration ("OSHA") in which she accused her then-employer, Defendant American Express Company ("Amex"), of engaging in whistleblower discrimination.  In August 2020, after being terminated by Amex, Lewis filed another administrative complaint with OSHA, again accusing Amex of whistleblower retaliation.  These complaints were consolidated and the resulting administrative proceedings stretched on for several years.  In November 2024, while the administrative proceedings were still ongoing, Lewis filed this action in federal court against Amex pursuant to the so-called "kick-out" provision of the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley" or "SOX").

During the early stages of this case, Amex moved to dismiss Lewis's claims as untimely. (Doc. 9.)  Amex argued that because SOX does not provide a limitations period for filing a kick-out action, Lewis's claims are governed by the four-year federal catch-all statute of limitations in 28 U.S.C. § 1658(a).  (*Id.*)  Amex further argued that because Lewis's claims accrued no later than August 2020 (when she was terminated), she needed to file this lawsuit by August 2024 in order to comply with § 1658(a)—and, thus, her November 2024 filing came too late.  (*Id.*)  In response, Lewis identified three reasons why Amex's motion should be denied: "(1) Plaintiff's [SOX] whistleblower claim is governed by a statute of limitations already contained in SOX, meaning a 4-year general catch-all provision does not apply; (2) if the Court did determine a general statute of limitations were to apply, said statute was properly tolled during the pendency of her administrative proceedings; and (3) equitable tolling principles further support the timeliness of Plaintiff's action under the circumstances of this case." (Doc. 15 at 2.)

In a July 11, 2025 order, the Court denied Amex's motion to dismiss.  (Doc. 23.)  The Court only reached Lewis's first argument, agreeing with her that "SOX creates a limitations period for kick-out actions.  Although this limitations period may be a bit unusual—whereas most federal statutes require an action to be initiated in federal court within a discrete number of months or years, SOX only creates a discrete time limit for the

- 3 -

initial filing of the administrative complaint and makes the time limit for filing an ensuing kick-out action contingent on the timing of the resulting administrative process—it is still a limitations period. As a result, § 1658(a) is, by its own terms, inapplicable—it only exists to fill gaps 'except as otherwise provided by law.'" (*Id.* at 12-13.) Given this determination, the Court declined to reach Lewis's alternative grounds for opposing dismissal. (*Id.* at 16 n.9 ["The conclusion that § 1658(a) is inapplicable makes it unnecessary to address the parties' arguments regarding equitable tolling."].)

Now pending before the Court is Amex's motion to certify the denial of its motion to dismiss for interlocutory appeal under 28 U.S.C. § 1292(b). (Doc. 26.) After the motion became fully briefed (Docs. 30, 31), the Court issued a tentative ruling (Doc. 38) and held oral argument.

For the reasons that follow, Amex's certification request is granted. However, Amex's related request for a stay of discovery pending appeal is denied.

## DISCUSSION

I.    Legal Standard

28 U.S.C. § 1292(b) provides in relevant part as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

*Id.* As the Ninth Circuit has explained, "Section 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025-26 (9th Cir. 1981). To grant a § 1292(b) motion, a district court must find "that the certification requirements of the statute have been met. These certification requirements are (1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *Id.* at 1026.

Moreover, "[e]ven when all three statutory criteria are satisfied, district court judges have unfettered discretion to deny certification." *Brizzee v. Fred Meyer Stores, Inc.*, 2008 WL 426510, *3 (D. Or. 2008) (citation omitted). *See also Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 424 F.3d 1545, 1550 (9th Cir. 1994) ("[T]he district court must agree to certify [an] order (a decision that itself is unreviewable) . . . ."); *Heaton v. Soc. Fin., Inc.*, 2016 WL 232433, *2 (N.D. Cal. 2016) ("The decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court.") (internal quotation marks omitted).

Section 1292(b) is "to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. District courts should certify non-final orders under § 1292(b) only in "rare circumstances," and "[e]ven where the district court makes such a certification, the court of appeals nevertheless has discretion to reject the interlocutory appeal, and does so quite frequently." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). *See also ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) ("The appellant has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment. Although there is little guiding that discretion in the text of § 1292(b) or our caselaw, it has been compared to the discretion the Supreme Court enjoys when reviewing petitions for certiorari. For example, this court may decline to exercise jurisdiction for reasons having little to do with the appeal itself, such as docket congestion. Indeed, it need not offer any reason at all.") (cleaned up).

II.    Analysis

Amex seeks to certify the following issue for interlocutory review: "[W]hether the default four-year statute of limitations of 28 U.S.C. § 1658(a) applies to de novo actions for whistleblower discrimination in violation of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A(a)."  (Doc. 26 at 1.)

**A.    Controlling Question Of Law**

1.    The Parties' Arguments

Amex contends the proposed issue presents a "controlling question of law" because (1) it raises a purely legal question of statutory interpretation; and (2) if resolved in Amex's favor, it would result in the termination of this case.  (Doc. 26 at 4-5.)  Amex also cites various authorities suggesting that statute-of-limitations issues qualify as "classic" examples of controlling questions of law suitable for certification under § 1292(b).  (*Id.*)

In response, Lewis does not dispute that the issue identified by Amex is a "question of law" but argues this issue is not "controlling."  (Doc. 30 at 5-8.)  According to Lewis, even if Amex is correct about § 1658(a)'s applicability, this lawsuit would still be timely because (1) due to SOX's administrative exhaustion requirement, her claims did not accrue until 180 days after she filed her last administrative complaint (*i.e.*, until February 2021), so her filing of this lawsuit in November 2024 would be timely even assuming that § 1658(a)'s four-year limitations period applies; and alternatively (2) she is entitled to equitable tolling for at least some portion of the time that her administrative proceedings were ongoing, which would also render her November 2024 lawsuit timely even assuming that § 1658(a)'s four-year limitations period applies.  (*Id.*)

In reply, Amex argues that "a question is no less controlling just because the would-be appellee throws multiple fallback arguments against the wall—especially not when those fallback arguments are waived and meritless, as they are here."  (Doc. 31 at 1.)  Amex emphasizes that a question "need not necessarily be 'dispositive' to be controlling within the meaning of § 1292(b)" and that even if Lewis's first fallback argument is correct, it would only rescue a subset of her claims.  (*Id.* at 3-5.)  Amex also contends that Lewis's alternative arguments fail on the merits and, at a minimum, that Lewis may simply request to expand the scope of the certification order to include those arguments.  (*Id.* at 5-8.)

2.    Analysis

The Court agrees with Amex that the proffered issue qualifies as a "question of law"—it presents a pure question of statutory interpretation.  The dispute turns on whether

this issue also qualifies as "controlling" in light of Lewis's identification of two alternative reasons why her lawsuit may wholly or at least partially survive dismissal even if the proffered issue is resolved in Amex's favor on appeal.

As an initial matter, the Court rejects Amex's contention that Lewis forfeited her ability to raise these arguments as a basis for opposing certification because she "did not make any of her now-asserted fallback arguments in her opposition to the motion to dismiss, despite having every reason and opportunity to do so." (Doc. 31 at 2.)  In fact, Lewis expressly raised alternative arguments in her opposition to the motion to dismiss: "The Motion should be denied because: (1) Plaintiff's [SOX] whistleblower claim is governed by a statute of limitations already contained in SOX, meaning a 4-year general catch-all provision does not apply; (2) *if the Court did determine a general statute of limitations were to apply, said statute was properly tolled during the pendency of her administrative proceedings; and (3) equitable tolling principles further support the timeliness of Plaintiff's action under the circumstances of this case*." (Doc. 15 at 2, emphasis added.)  Admittedly, Lewis did not develop these arguments in much (if any) depth in the body of her opposition brief, but she still raised them.

Turning to the merits, "[a] controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court." *ICTSI Oregon, Inc.*, 22 F.4th at 1130.[1]  The Court will confess that it finds the Ninth Circuit's existing caselaw on the meaning of this standard to be less than fully illuminating. *See generally Sierra Foothills Public Utility Dist. v. Clarendon Am. Ins. Co.*, 2006 WL 2085244, *2 (E.D. Cal. 2006) ("The Ninth Circuit's guidance as to what constitutes a controlling question of law is minimal.").  On the one hand, the Ninth Circuit "do[es] not hold that a question brought here on interlocutory appeal must be dispositive of the lawsuit in order to be regarded as controlling." *United States v. Woodbury*, 263 F.2d

---

[1]    Other Ninth Circuit decisions frame the inquiry as whether the resolution of the certified issue "could" materially affect the outcome of the litigation. *In re Cement Antitrust Litig.*, 673 F.2d 1026 ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.").

784, 786 (9th Cir. 1959).  *See also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation.").  On the other hand, the Ninth Circuit has emphasized that, at least in the context of jurisdictional and statute-of-limitations issues, certification is "intended primarily" to be allowed only where the issue is dispositive: "Section 1292(b) was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions which, if decided in favor of the appellant, would end the lawsuit.  Examples of such questions are those relating to jurisdiction or a statute of limitations which the district court has decided in a manner which keeps the litigation alive but which, if answered differently on appeal, would terminate the case."  *Woodbury*, 263 F.3d at 787.

Adding to the conceptual difficulty is the overlay of the third required element under § 1292(b) (*i.e.*, that an immediate appeal may materially advance the ultimate termination of the litigation).  Because this element must operate independently from the "controlling question of law" element, the Ninth Circuit has held that an issue does not qualify as "controlling" simply because its immediate resolution may appreciably shorten the time, effort, or expense of conducting a lawsuit:

> Some courts have adopted the view that a question is controlling if it is one the resolution of which may appreciably shorten the time, effort, or expense of conducting a lawsuit, thus essentially reading the "controlling question of law" requirement out of section 1292(b).  We reject this approach.  Congress could easily have chosen only to require that a question materially advance the litigation in order for it to be immediately reviewable.  Since Congress chose to add the additional requirement that the issue for which review is sought must be a "controlling question of law," it would be improper for us to construe the statute as though these two requirements were interchangeable.

*In re Cement Antitrust Litig.*, 673 F.2d at 1027.

At any rate, acknowledging that the issue presents a close call, the Court concludes that Amex's proffered issue qualifies as "controlling."  Although Lewis identifies two

alternative reasons why her claims may not be subject to dismissal even if the proffered issue is resolved in Amex's favor on appeal, this at most shows that the proffered issue is not necessarily dispositive. But as noted, the Ninth Circuit does not require an issue to be "dispositive" in order to qualify as "controlling"—instead, the issue must simply "materially affect the outcome of the litigation" in the district court. That standard is satisfied here—a statute-of-limitations ruling that has the potential to end the litigation, and at a minimum may significantly curtail the scope of the litigation, is properly characterized as a ruling that "materially affect[s] the outcome." *See, e.g., Fed. Energy Reg. Comm'n v. Vitol Inc.*, 2022 WL 583998, \*2 (E.D. Cal. 2022) ("The controlling question requirement does not require that reversal of the district court's order terminate the litigation. . . . In light of this standard, the limitations period is a 'controlling' question. If the Ninth Circuit agrees with defendants, FERC's claim would be time barred. FERC contends otherwise, noting it advanced two other arguments for timeliness, which the court did not address in its previous order. Ninth Circuit precedent is clear, however, that a controlling question of law need not be dispositive of the lawsuit.") (cleaned up); *Allstate Ins. Co. v. Nassiri*, 2012 WL 3879887, \*2-3 (D. Nev. 2012) (concluding that "[c]learly, the effect a statute of limitations has on a case is a controlling question of law, as any claims falling outside of the four-year statute would be precluded from litigation," even though not all of the claims in the case were subject to the statute-of-limitations defense). *See also Doe 1 v. Github, Inc.*, 2024 WL 4336532, \*1 (N.D. Cal. 2024) (concluding that statutory interpretation issue qualified as a "controlling" issue of law even though the case would go forward regardless of its resolution). Furthermore, although *Woodbury* seems to suggest that statute-of-limitations issues should ordinarily be dispositive to qualify as "controlling," it does not hold that they always must be dispositive to so qualify.

Finally, as Amex notes, the Ninth Circuit may have discretion to reach (or not reach) the merits of Lewis's alternative arguments regarding delayed accrual and equitable tolling if it agrees to accept jurisdiction over the certified question. *Deutsche Bank Nat. Trust Co. v. F.D.I.C.*, 744 F.3d 1124, 1134 (9th Cir. 2014) ("An appellate court's interlocutory

jurisdiction under 28 U.S.C. § 1292(b) permits it to address any issue fairly included within the certified order because it is the order that is appealable, and not the controlling question identified by the district court.") (cleaned up); *Angle v. United States*, 709 F.2d 570, 573 (9th Cir. 1983) ("[W]e can affirm a ruling on any ground supported by the record . . . . Thus we conclude that we can consider the breach of trust theory as a ground for upholding jurisdiction under the Tucker Act, even though the appeal here is interlocutory . . . . We can think of no good reason why the rule should not apply when we consider a question that is properly before us under 28 U.S.C. § 1292(b). *Myers* was a § 1292(b) appeal in which the winning party on the issue below had not 'focused' on appeal on the alternate ground favored by the court of appeals.") (citations omitted). *See also Reese*, 643 F.3d at 689 ("An appellee is well-advised, in seeking interlocutory review of issues not certified, to file a Rule 5(b)(2) cross-petition."). The potential for such review underscores why the "controlling" element is satisfied here.

### B. Substantial Grounds For Difference Of Opinion

#### 1. The Parties' Arguments

Amex contends there are substantial grounds for difference of opinion regarding its proffered issue because "the Ninth Circuit has not determined what limitations period governs kick-out actions under the Sarbanes-Oxley Act" and because "jurists can reasonably disagree—and indeed, have disagreed—about whether the four-year default limitations period applies." (Doc. 26 at 5.) As it did in its motion to dismiss, Amex contends that a decision from the Fourth Circuit, a decision by a district court in the Central District of California, and a brief from the Department of Labor support its interpretation. (*Id.* at 5-7.) Amex concludes that even if these authorities "are read to not squarely address the question here, they at least highlight the possibility that fair-minded jurists may disagree with the Court's conclusion on these similar issues, and that is good enough." (*Id.* at 7, cleaned up.)

In response, Lewis argues there is no substantial ground for difference of opinion because "[a] single out-of-circuit case doesn't suffice, especially if intra-circuit precedent

aligns." (Doc. 30 at 8-9.) Lewis concludes: "Here, the Fourth Circuit stands alone, not warranting certification." (*Id.* at 9.)

In reply, Amex argues that "Lewis is wrong . . . that 'the Fourth Circuit stands alone'—though that would be enough. Lewis forgets that a district court in this Circuit has also held that § 1658(a) applies to kick-out actions under the Sarbanes-Oxley Act." (Doc. 31 at 8.) Amex also reiterates its arguments as to why the Fourth Circuit decision is enough to satisfy the second certification element. (*Id.* at 8-9.)

2.    Analysis

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (internal quotation marks omitted). "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed. Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese*, 643 F.3d at 688. However, "just because a court is the first to rule on a particular question . . . does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Couch*, 611 F.3d at 633 (citation omitted).

The Court agrees with Amex that substantial grounds for difference of opinion exist with respect to the proffered issue. The July 11, 2025 order speaks for itself on this topic: "The Ninth Circuit has not directly addressed this issue and each side cites non-binding cases that reach contradictory conclusions." (Doc. 23 at 10.) The July 11, 2025 order also acknowledged that "Amex understandably views . . . *Jones* . . . as supporting its position

- 11 -

here" before proceeding to explain why that reliance was misplaced. (*Id.* at 14.) Where, as here, a pure issue of law has not been addressed by the Ninth Circuit and has generated a split in authority among other courts, the second requirement under § 1292(b) is satisfied.

C.     **Materially Advance The Ultimate Termination Of The Litigation**

1.     The Parties' Arguments

The parties' arguments regarding the third element largely track their arguments regarding the first element. Amex argues that the third element is satisfied "[f]or substantially the same reasons that the issue here constitutes a controlling issue of law" and contends that "a holding from the Ninth Circuit that Lewis's claims are time-barred would avoid protracted and expensive litigation and end the lawsuit." (Doc. 26 at 7-8, cleaned up.)

In response, Lewis once again argues that "[r]eversal would not terminate the action, given the alternative timeliness and equitable tolling arguments." (Doc. 30 at 9.)

In reply, Amex reiterates that "a ruling that § 1658(a)'s four-year limitations period applies will not only materially advance the litigation, it will also guarantee its termination, for all of Lewis's claims were filed after four years, and Lewis has waived any argument that her claims are nevertheless timely" and "[a]t minimum, such a ruling could bar the whole suit and will bar at least some of Lewis's claims." (Doc. 31 at 9.)

2.     Analysis

"The 'materially advance' prong is satisfied when the resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings." *ICTSI Oregon, Inc.*, 22 F.4th at 1131 (cleaned up). As many courts have noted, this inquiry "is closely related to the question of whether an issue of law is 'controlling' in that the district court should consider the effect of a reversal on the management of the case." *Lakeland Village Homeowners Ass'n v. Great American Ins. Grp.*, 727 F. Supp. 2d 887, 896 (E.D. Cal. 2010) (cleaned up). *See also Biederman v. FCA US LLC*, 2025 WL 1266907, *5 (N.D. Cal. 2025) ("Some district courts analyze this prong in conjunction with the first prong. And this makes sense, considering both prongs look to

the materiality of the interlocutory appeal's impact on the case.").

The Court agrees with Amex that an immediate appeal may materially advance the ultimate termination of the litigation. As discussed in Part II.A above, the requested ruling has the potential to end the litigation, and at a minimum may significantly curtail the scope of the litigation.

To be clear, certification will not always be appropriate in a case involving a controlling question of law regarding a statute-of-limitations issue. In *Nassiri*, although the district court found that the first element under § 1292(b) was satisfied because "[c]learly, the effect a statute of limitations has on a case is a controlling question of law, as any claims falling outside of the four-year statute would be precluded from litigation," the court found that the third element under § 1292(b) was not satisfied because even if "the Ninth Circuit accepted the appeal, and the Ninth Circuit reversed the court's order denying the motion for summary judgment, there would still be three claims that would be left to be litigated. Therefore, reversal of the court's order would not end the litigation . . . . Further, this matter has been litigated, as the parties are well aware, for four years and the parties have recently submitted a joint pretrial order pursuant to court order. Thus, based on the current stage of litigation, an appeal on this matter will not appreciably shorten the time, effort or expense of conducting the lawsuit." *Nassiri*, 2012 WL 3879887 at *2-3 (cleaned up). But those considerations are not present here—all of Plaintiff's claims are potentially subject to the statute-of-limitations issue that Amex seeks to certify and Amex raised that issue, and then sought certification, at the very beginning of the case, before discovery even began. Courts have concluded that certification is appropriate under analogous circumstances. *Mosteiro v. Simmons*, 2022 WL 4483987, *6 (E.D. Cal. 2022) ("[T]he Court's ruling on the statute of limitations issue involves a controlling question of law . . . [and] resolution of an interlocutory appeal will wholly advance this case, which is still in its early stages with no imminent trial date, because whether Plaintiff is entitled to tolling . . . will be dispositive as to whether Plaintiff's case will move forward or be dismissed. As a result, Defendant's request for an order for interlocutory appeal is

- 13 -

GRANTED.").

### D. Discretion

#### 1. The Parties' Arguments

Amex contends the Court should exercise its discretion to allow certification for three reasons: (1) "[s]tatute of limitations questions like this one are especially deserving of interlocutory consideration," both because such review will "serve[] judicial economy" and because statute of limitations questions often "evade appellate review," which "may explain why there are not more circuit-level decisions on the question"; (2) a ruling in Amex's favor could "spare countess defendants expensive, time-consuming litigation— and the pressure to settle that comes with it"; and (3) "[t]he limitations period here is 'unusual'" and "presents just the kind of clean, novel legal issue the Ninth Circuit should have a chance to address." (Doc. 26 at 8-9.)

In response, Lewis does not specifically address the discretionary nature of certification. However, Lewis does raise the concern that "[t]o adopt Amex's position would result in an inundation of interlocutory aspirations in multitudes of statute of limitations rulings by district judges." (Doc. 30 at 5.)

In reply, Amex contends: "Lewis does not deny the importance of the question presented for certification. Nor could she. [SOX] is landmark federal legislation, and discrimination claims are common. Nor does Lewis deny that the answer to the limitations question may long elude resolution by the Ninth Circuit absent an interlocutory appeal. . . . Lewis warns of 'an inundation of interlocutory aspirations in multitudes of statute of limitations rulings by district judges.' But only the rarest limitations rulings will raise unresolved questions of the meaning of federal law that have divided courts across the country, as [the July 11, 2025] Order does." (Doc. 31 at 9-10.)

#### 2. Analysis

As noted, "district court judges have unfettered discretion to deny certification," "[e]ven when all three statutory criteria are satisfied." *Brizzee*, 2008 WL 426510 at *3 (citation omitted). Even so, the Court concludes that certification is appropriate here. As

discussed in earlier portions of this order, the proffered issue raises a somewhat novel, unsettled question of law that has thus far generated conflicting results outside the Ninth Circuit. If resolved in Amex's favor, the issue has the potential to end, or at least significantly limit, this case. Although certification under § 1292(b) must, of course, be rare and reserved for exceptional cases, it is hard to think of an issue more suited for interlocutory review than a pure question of law related to a potentially dispositive statute-of-limitations defense raised at the very outset of the case. *See, e.g., SEC v. Rind*, 991 F.2d 1486, 1488 (9th Cir. 1993) ("The district court held that the Commission was not bound by a statute of limitations . . . . We have jurisdiction over this timely appeal pursuant to 28 U.S.C. § 1292(b)."); *Vitol Inc.*, 2022 WL 583998 at \*1, \*4 (choosing to "exercise its discretion to certify an interlocutory appeal under 28 U.S.C. § 1292(b)" where the disputed issue was "whether FERC's complaint was filed after the statutory limitations period had expired"); *Mosteiro*, 2022 WL 4483987 at \*6 (same). *See also Woodbury*, 263 F.2d at 787 ("Section 1292(b) was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions which, if decided in favor of the appellant, would end the lawsuit. Examples of such questions are those relating to . . . a statute of limitations which the district court has decided in a manner which keeps the litigation alive but which, if answered differently on appeal, would terminate the case.").

E.    **Stay Pending Appeal**

1.    The Parties' Arguments

In the final portion of its motion, Amex argues that "[i]f the Court certifies its Order for interlocutory appeal, it should also suspend all existing deadlines and proceedings in this Court pending disposition of any further appellate proceedings." (Doc. 26 at 9.) "Without a stay pending resolution of an interlocutory appeal, the parties and the court will expend substantial resources, potentially all for naught." (*Id.*) Amex contends a stay is particularly warranted because Lewis previously engaged in "extremely wasteful" conduct, by litigating in the administrative forum for many years before filing this kick-out just as

the administrative proceedings were about to be resolved in Amex's favor, and thus a stay "would stop Lewis from further wasting time and resources." (*Id.*)

In her response to the certification motion, Lewis does not specifically address the stay request. (Doc. 30.) However, in her response to a subsequent request for a temporary stay of discovery filed by Amex, Lewis argues that discovery should proceed even if certification is granted. (Doc. 35 at 4-9.) According to Lewis, this is because the applicable test under *Nken v. Holder*, 557 U.S. 418 (2009), requires the party seeking a stay pending appeal to establish both a likelihood of success on the merits (which Amex cannot establish and has not even attempted to establish) and that the movant will seek irreparable injury absent a stay (which Amex has not even attempted to establish). (*Id.*) Lewis further contends that she will suffer harm from a stay, as "[i]n a whistleblower retaliation case such as this, discovery delays are particularly prejudicial to the Plaintiff who carries the burden of proof," and that the scope of discovery will, in any event, "be more targeted given prior productions in the agency proceeding." (*Id.*)

In its reply in support of its certification motion, Amex contends: "[S]tays are commonly granted pursuant to 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (Doc. 31 at 10, quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)).

2.      Analysis

Amex has failed to establish that a stay of discovery is warranted during the pendency of its interlocutory appeal. True, courts sometimes grant such stays after issuing certification orders. *See, e.g., Mosteiro*, 2022 WL 4483987 at *6 ("This case is STAYED pending resolution of a petition for permission to appeal to the Ninth Circuit Court of Appeals and any subsequent appellate proceeding."). However, courts do not always do so. *See, e.g., Vitol Inc.*, 2022 WL 583998 at *4-5 (denying stay).

In *Vitol,* the district court explained that "[f]our considerations govern judicial discretion in ruling on a motion to stay: '(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be

irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Id.* at \*4. The court concluded the first stay factor was not satisfied, even though the movant had done enough to establish that the challenged ruling raised substantial grounds for differences of opinion, because the court believed its challenged ruling was correct. *Id.* ("For the same reason the court previously denied defendants' motion to dismiss, the court concludes defendants are unlikely to succeed on the merits."). Here, too, although certification may be warranted, the Court is unpersuaded that Amex has made a strong showing that it is likely to succeed on the merits of any interlocutory appeal challenging the July 11, 2025 order.

As for the second stay factor, the court in *Vitol* acknowledged that "[t]he costs of pretrial litigation may amount to irreparable harm in some situations, such as when the appeal determines whether the case will go to arbitration," but held that "[n]o such danger justifies a stay here. Defendants have not shown that ongoing litigation will pose any undue hardship." *Id.* at \*5. Here, too, Amex has not established that it would suffer irreparable harm from continuing to engage in discovery. Moreover, as Lewis notes, the scope of discovery is likely to be less expansive than might otherwise be expected due to the parties' years of preceding litigation in the administrative forum.

Finally, although the analysis need not go any further in light of those determinations, the Court also concludes that a stay is unwarranted because (1) Lewis, as the party with the burden of proof, would suffer a substantial injury is forced to forgo discovery while awaiting the Ninth Circuit's decision; and (2) the possibility that a ruling in Amex's favor in the interlocutory appeal may not be fully dispositive further counsels against delaying the discovery process for, potentially, years while the interlocutory appeal is pending.

Accordingly,

**IT IS ORDERED** that:

1.     Amex's motion for an order permitting interlocutory appeal (Doc. 26) is

**granted in part and denied in part**.  More specifically:

      a.     The Court grants Amex permission to appeal from the July 11, 2025 order denying Amex's motion to dismiss.

      b.     The Court denies Amex's request to suspend all deadlines and stay proceedings in this Court pending Amex's pursuant of the interlocutory appeal.

2.    The parties are directed to meet, confer, and develop a Rule 26(f) Joint Case Management Report, which must be filed within 14 days of the date of this order.  It is Lewis's responsibility to initiate the Rule 26(f) meeting and preparation of the Joint Case Management Report. Amex shall promptly and cooperatively participate in the Rule 26(f) meeting and assist in preparation of the Joint Case Management Report.