1    **WO**

6         **IN THE UNITED STATES DISTRICT COURT**

7              **FOR THE DISTRICT OF ARIZONA**

9   Sophia Lewis,                          No. CV-24-03370-PHX-DWL

10               Plaintiff,                 **ORDER**

11   v.

12   American Express Company,

13               Defendant.

15         In  December  2019,  Plaintiff  Sophia  Lewis  ("Lewis")  filed  an  administrative
16   complaint with the United States Department of Labor, Occupational Safety and Health
17   Administration ("OSHA") in which she accused her then-employer, Defendant American
18   Express Company ("Amex"), of engaging in whistleblower discrimination.  In August
19   2020, after being terminated by Amex, Lewis filed another administrative complaint with
20   OSHA,  again  accusing  Amex  of  whistleblower  retaliation.   These  complaints  were
21   consolidated and the resulting administrative proceedings stretched on for several years.
22   In November 2024, while the administrative proceedings were still ongoing, Lewis filed
23   this action in federal court against Amex pursuant to the so-called "kick-out" provision of
24   the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley" or "SOX").

25         During  the  early  stages  of  this  case,  Amex  moved  to  dismiss  Lewis's  claims  as
26   untimely.  (Doc. 9.)  Amex argued that because SOX does not provide a limitations period
27   for filing a kick-out action, Lewis's claims are governed by the four-year federal catch-all
28   statute of limitations in 28 U.S.C. § 1658(a).  (*Id.*)  Amex further argued that because

1    Lewis's claims accrued no later than August 2020 (when she was terminated), she needed

2    to file this lawsuit by August 2024 in order to comply with § 1658(a)—and, thus, her

3    November 2024 filing came too late.  (*Id.*)  In response, Lewis identified three reasons why

4    Amex's motion should be denied: "(1) Plaintiff's [SOX] whistleblower claim is governed

5    by a statute of limitations already contained in SOX, meaning a 4-year general catch-all

6    provision does not apply; (2) if the Court did determine a general statute of limitations were

7    to apply, said statute was properly tolled during the pendency of her administrative

8    proceedings; and (3) equitable tolling principles further support the timeliness of Plaintiff's

9    action under the circumstances of this case."  (Doc. 15 at 2.)

10       In a July 11, 2025 order, the Court denied Amex's motion to dismiss.  (Doc. 23.)

11   The Court only reached Lewis's first argument, agreeing with her that "SOX creates a

12   limitations period for kick-out actions.  Although this limitations period may be a bit

13   unusual—whereas most federal statutes require an action to be initiated in federal court

14   within a discrete number of months or years, SOX only creates a discrete time limit for the

15   initial filing of the administrative complaint and makes the time limit for filing an ensuing

16   kick-out action contingent on the timing of the resulting administrative process—it is still

17   a limitations period.  As a result, § 1658(a) is, by its own terms, inapplicable—it only exists

18   to fill gaps 'except as otherwise provided by law.'"  (*Id.* at 12-13.)   Given this

19   determination, the Court declined to reach Lewis's alternative grounds for opposing

20   dismissal.  (*Id.* at 16 n.9 ["The conclusion that § 1658(a) is inapplicable makes it

21   unnecessary to address the parties' arguments regarding equitable tolling."].)

22       Now pending before the Court is Amex's motion to certify the denial of its motion

23   to dismiss for interlocutory appeal under 28 U.S.C. § 1292(b).  (Doc. 26.)  After the motion

24   became fully briefed (Docs. 30, 31), the Court issued a tentative ruling (Doc. 38) and held

25   oral argument (Doc. 39).

26       For the reasons that follow, Amex's certification request is granted.  However,

27   Amex's related request for a stay of discovery pending appeal is denied.

28       …

**DISCUSSION**

I.    <u>Legal Standard</u>

28 U.S.C. § 1292(b) provides in relevant part as follows:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order.

*Id.* As the Ninth Circuit has explained, "Section 1292(b) provides a mechanism by which litigants can bring an immediate appeal of a non-final order upon the consent of both the district court and the court of appeals." *In re Cement Antitrust Litig.*, 673 F.2d 1020, 1025-26 (9th Cir. 1981). To grant a § 1292(b) motion, a district court must find "that the certification requirements of the statute have been met. These certification requirements are (1) that there be a controlling question of law, (2) that there be substantial grounds for difference of opinion, and (3) that an immediate appeal may materially advance the ultimate termination of the litigation." *Id.* at 1026. However, "[e]ven when all three statutory criteria are satisfied, district court judges have unfettered discretion to deny certification." *Brizzee v. Fred Meyer Stores, Inc.*, 2008 WL 426510, *3 (D. Or. 2008) (citation omitted). *See also Exec. Software N. Am., Inc. v. U.S. Dist. Court for Cent. Dist. of Cal.*, 424 F.3d 1545, 1550 (9th Cir. 1994) ("[T]he district court must agree to certify [an] order (a decision that itself is unreviewable) . . . ."); *Heaton v. Soc. Fin., Inc.*, 2016 WL 232433, *2 (N.D. Cal. 2016) ("The decision to certify an order for interlocutory appeal is committed to the sound discretion of the district court.") (internal quotation marks omitted).

Section 1292(b) is "to be used only in exceptional situations in which allowing an interlocutory appeal would avoid protracted and expensive litigation." *In re Cement Antitrust Litig.*, 673 F.2d at 1026. District courts should certify non-final orders under § 1292(b) only in "rare circumstances," and "[e]ven where the district court makes such a certification, the court of appeals nevertheless has discretion to reject the interlocutory

appeal, and does so quite frequently." *James v. Price Stern Sloan, Inc.*, 283 F.3d 1064, 1067 n.6 (9th Cir. 2002). *See also ICTSI Oregon, Inc. v. Int'l Longshore & Warehouse Union*, 22 F.4th 1125, 1131 (9th Cir. 2022) ("The appellant has the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment. Although there is little guiding that discretion in the text of § 1292(b) or our caselaw, it has been compared to the discretion the Supreme Court enjoys when reviewing petitions for certiorari. For example, this court may decline to exercise jurisdiction for reasons having little to do with the appeal itself, such as docket congestion. Indeed, it need not offer any reason at all.") (cleaned up).

II.    Analysis

Amex seeks to certify the following issue for interlocutory review: "[W]hether the default four-year statute of limitations of 28 U.S.C. § 1658(a) applies to de novo actions for whistleblower discrimination in violation of the Sarbanes-Oxley Act of 2002, 18 U.S.C. § 1514A(a)." (Doc. 26 at 1.)

A.    **Controlling Question Of Law**

1.    The Parties' Arguments

Amex contends the proposed issue presents a "controlling question of law" because (1) it raises a purely legal question of statutory interpretation; and (2) if resolved in Amex's favor, it would result in the termination of this case. (Doc. 26 at 4-5.) Amex also cites various authorities suggesting that statute-of-limitations issues qualify as "classic" examples of controlling questions of law suitable for certification under § 1292(b). (*Id.*)

In response, Lewis does not dispute that the issue identified by Amex is a "question of law" but argues this issue is not "controlling." (Doc. 30 at 5-8.) According to Lewis, even if Amex is correct about § 1658(a)'s applicability, this lawsuit would still be timely because (1) due to SOX's administrative exhaustion requirement, her claims did not accrue until 180 days after she filed her last administrative complaint (*i.e.*, until February 2021), so her filing of this lawsuit in November 2024 would be timely even assuming that

§ 1658(a)'s four-year limitations period applies; and alternatively (2) she is entitled to equitable tolling for at least some portion of the time that her administrative proceedings were ongoing, which would also render her November 2024 lawsuit timely even assuming that § 1658(a)'s four-year limitations period applies. (*Id.*)

In reply, Amex argues that "a question is no less controlling just because the would-be appellee throws multiple fallback arguments against the wall—especially not when those fallback arguments are waived and meritless, as they are here." (Doc. 31 at 1.) Amex emphasizes that a question "need not necessarily be 'dispositive' to be controlling within the meaning of § 1292(b)" and that even if Lewis's first fallback argument is correct, it would only rescue a subset of her claims. (*Id.* at 3-5.) Amex also contends that Lewis's alternative arguments fail on the merits and, at a minimum, that Lewis may simply request to expand the scope of the certification order to include those arguments. (*Id.* at 5-8.)

### 2. Analysis

The Court agrees with Amex that the proffered issue qualifies as a "question of law"—it presents a pure question of statutory interpretation. The dispute turns on whether this issue also qualifies as "controlling" in light of Lewis's identification of two alternative reasons why her lawsuit may wholly or at least partially survive dismissal even if the proffered issue is resolved in Amex's favor on appeal.

As an initial matter, the Court rejects Amex's contention that Lewis forfeited her ability to raise these arguments as a basis for opposing certification because she "did not make any of her now-asserted fallback arguments in her opposition to the motion to dismiss, despite having every reason and opportunity to do so." (Doc. 31 at 2.) In fact, Lewis expressly raised alternative arguments in her opposition to the motion to dismiss: "The Motion should be denied because: (1) Plaintiff's [SOX] whistleblower claim is governed by a statute of limitations already contained in SOX, meaning a 4-year general catch-all provision does not apply; (2) *if the Court did determine a general statute of limitations were to apply, said statute was properly tolled during the pendency of her administrative proceedings; and (3) equitable tolling principles further support the*

*timeliness of Plaintiff's action under the circumstances of this case*." (Doc. 15 at 2, emphasis added.)  Admittedly, Lewis did not develop these arguments in much (if any) depth in the body of her opposition brief, but she still raised them.

Turning to the merits, "[a] controlling question of law must be one of law—not fact—and its resolution must materially affect the outcome of litigation in the district court."  *ICTSI Oregon, Inc.*, 22 F.4th at 1130.[1]  The Court will confess that it finds the Ninth Circuit's existing caselaw on the meaning of this standard to be less than fully illuminating.  *See generally Sierra Foothills Public Utility Dist. v. Clarendon Am. Ins. Co.*, 2006 WL 2085244, *2 (E.D. Cal. 2006) ("The Ninth Circuit's guidance as to what constitutes a controlling question of law is minimal.").  On the one hand, the Ninth Circuit "do[es] not hold that a question brought here on interlocutory appeal must be dispositive of the lawsuit in order to be regarded as controlling."  *United States v. Woodbury*, 263 F.2d 784, 786 (9th Cir. 1959).  *See also Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) ("[N]either § 1292(b)'s literal text nor controlling precedent requires that the interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation.").  On the other hand, the Ninth Circuit has emphasized that, at least in the context of jurisdictional and statute-of-limitations issues, certification is "intended primarily" to be allowed only where the certified issue is dispositive: "Section 1292(b) was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions which, if decided in favor of the appellant, would end the lawsuit.  Examples of such questions are those relating to jurisdiction or a statute of limitations which the district court has decided in a manner which keeps the litigation alive but which, if answered differently on appeal, would terminate the case."  *Woodbury*, 263 F.3d at 787.

Adding to the conceptual difficulty is the overlay of the third required element under

---

[1]     Other Ninth Circuit decisions frame the inquiry as whether the resolution of the certified issue "could" materially affect the outcome of the litigation.  *In re Cement Antitrust Litig.*, 673 F.2d at 1026 ("[A]ll that must be shown in order for a question to be 'controlling' is that resolution of the issue on appeal could materially affect the outcome of litigation in the district court.").

§ 1292(b) (*i.e.*, that an immediate appeal may materially advance the ultimate termination of the litigation).  Because this element must operate independently from the "controlling question of law" element, the Ninth Circuit has held that an issue does not qualify as "controlling" simply because its immediate resolution may appreciably shorten the time, effort, or expense of conducting a lawsuit:

> Some courts have adopted the view that a question is controlling if it is one the resolution of which may appreciably shorten the time, effort, or expense of conducting a lawsuit, thus essentially reading the "controlling question of law" requirement out of section 1292(b).  We reject this approach.  Congress could easily have chosen only to require that a question materially advance the litigation in order for it to be immediately reviewable.  Since Congress chose to add the additional requirement that the issue for which review is sought must be a "controlling question of law," it would be improper for us to construe the statute as though these two requirements were interchangeable.

*In re Cement Antitrust Litig.*, 673 F.2d at 1027.

At any rate, the Court concludes that Amex's proffered issue qualifies as "controlling."  Although Lewis identifies two alternative reasons why her claims may not be subject to dismissal even if the proffered issue is resolved in Amex's favor on appeal, this at most shows that the proffered issue is not necessarily dispositive.  But as noted, the Ninth Circuit does not require an issue to be "dispositive" in order to qualify as "controlling"—instead, the issue must simply "materially affect the outcome of the litigation" in the district court.  That standard is satisfied here—a statute-of-limitations ruling that has the potential to end the litigation, and at a minimum may significantly curtail the scope of the litigation, is properly characterized as a ruling that "materially affect[s] the outcome."  *See, e.g.*, *Fed. Energy Reg. Comm'n v. Vitol Inc.*, 2022 WL 583998, *2 (E.D. Cal. 2022) ("The controlling question requirement does not require that reversal of the district court's order terminate the litigation. . . .  In light of this standard, the limitations period is a 'controlling' question.  If the Ninth Circuit agrees with defendants, FERC's claim would be time barred.  FERC contends otherwise, noting it advanced two other arguments for timeliness, which the court did not address in its previous order.  Ninth

1    Circuit precedent is clear, however, that a controlling question of law need not be
2    dispositive of the lawsuit.") (cleaned up); *Allstate Ins. Co. v. Nassiri*, 2012 WL 3879887,
3    *2-3 (D. Nev. 2012) (concluding that "[c]learly, the effect a statute of limitations has on a
4    case is a controlling question of law, as any claims falling outside of the four-year statute
5    would be precluded from litigation," even though not all of the claims in the case were
6    subject to the statute-of-limitations defense). *See also Doe 1 v. Github, Inc.*, 2024 WL
7    4336532, *1 (N.D. Cal. 2024) (concluding that statutory interpretation issue qualified as a
8    "controlling" issue of law even though the case would go forward regardless of its
9    resolution). Furthermore, although *Woodbury* seems to suggest that statute-of-limitations
10   issues should ordinarily be dispositive to qualify as "controlling," it does not hold that they
11   always must be dispositive to so qualify.

12       Finally, as Amex notes, the Ninth Circuit may have discretion to reach (or not reach)
13   the merits of Lewis's alternative arguments regarding delayed accrual and equitable tolling
14   if it agrees to accept jurisdiction over the certified question. *Deutsche Bank Nat. Trust Co.*
15   *v. F.D.I.C.*, 744 F.3d 1124, 1134 (9th Cir. 2014) ("An appellate court's interlocutory
16   jurisdiction under 28 U.S.C. § 1292(b) permits it to address any issue fairly included within
17   the certified order because it is the order that is appealable, and not the controlling question
18   identified by the district court.") (cleaned up); *Angle v. United States*, 709 F.2d 570, 573
19   (9th Cir. 1983) ("[W]e can affirm a ruling on any ground supported by the record . . . .
20   Thus we conclude that we can consider the breach of trust theory as a ground for upholding
21   jurisdiction under the Tucker Act, even though the appeal here is interlocutory . . . . We
22   can think of no good reason why the rule should not apply when we consider a question
23   that is properly before us under 28 U.S.C. § 1292(b). *Myers* was a § 1292(b) appeal in
24   which the winning party on the issue below had not 'focused' on appeal on the alternate
25   ground favored by the court of appeals.") (citations omitted). *See also Reese*, 643 F.3d at
26   689 ("An appellee is well-advised, in seeking interlocutory review of issues not certified,
27   to file a Rule 5(b)(2) cross-petition."). The potential for such review underscores why the
28   "controlling" element is satisfied here.

B.      **Substantial Grounds For Difference Of Opinion**

1.      The Parties' Arguments

Amex contends there are substantial grounds for difference of opinion regarding its proffered issue because "the Ninth Circuit has not determined what limitations period governs kick-out actions under the Sarbanes-Oxley Act" and because "jurists can reasonably disagree—and indeed, have disagreed—about whether the four-year default limitations period applies." (Doc. 26 at 5.)  As it did in its motion to dismiss, Amex contends that a decision from the Fourth Circuit, a decision by a district court in the Central District of California, and a brief from the Department of Labor support its interpretation. (*Id.* at 5-7.)  Amex concludes that even if these authorities "are read to not squarely address the question here, they at least highlight the possibility that fair-minded jurists may disagree with the Court's conclusion on these similar issues, and that is good enough." (*Id.* at 7, cleaned up.)

In response, Lewis argues there is no substantial ground for difference of opinion because "[a] single out-of-circuit case doesn't suffice, especially if intra-circuit precedent aligns." (Doc. 30 at 8-9.)  Lewis concludes: "Here, the Fourth Circuit stands alone, not warranting certification." (*Id.* at 9.)

In reply, Amex argues that "Lewis is wrong . . . that 'the Fourth Circuit stands alone'—though that would be enough.  Lewis forgets that a district court in this Circuit has also held that § 1658(a) applies to kick-out actions under the Sarbanes-Oxley Act." (Doc. 31 at 8.)  Amex also reiterates its arguments as to why the Fourth Circuit decision is enough to satisfy the second certification element. (*Id.* at 8-9.)

2.      Analysis

"To determine if a 'substantial ground for difference of opinion' exists under § 1292(b), courts must examine to what extent the controlling law is unclear." *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010).  "Courts traditionally will find that a substantial ground for difference of opinion exists where the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point, if complicated

questions arise under foreign law, or if novel and difficult questions of first impression are presented." *Id.* (internal quotation marks omitted). "A substantial ground for difference of opinion exists where reasonable jurists might disagree on an issue's resolution, not merely where they have already disagreed. Stated another way, when novel legal issues are presented, on which fair-minded jurists might reach contradictory conclusions, a novel issue may be certified for interlocutory appeal without first awaiting development of contradictory precedent." *Reese*, 643 F.3d at 688. However, "just because a court is the first to rule on a particular question . . . does not mean there is such a substantial difference of opinion as will support an interlocutory appeal." *Couch*, 611 F.3d at 633 (citation omitted).

The Court agrees with Amex that substantial grounds for difference of opinion exist with respect to the proffered issue. The July 11, 2025 order speaks for itself on this topic: "The Ninth Circuit has not directly addressed this issue and each side cites non-binding cases that reach contradictory conclusions." (Doc. 23 at 10.) The July 11, 2025 order also acknowledged that "Amex understandably views . . . *Jones* . . . as supporting its position here" before proceeding to explain why that reliance was misplaced. (*Id.* at 14.) Where, as here, a pure issue of law has not been addressed by the Ninth Circuit and has generated a split in authority among other courts, the second requirement under § 1292(b) is satisfied.

### C.    **Materially Advance The Ultimate Termination Of The Litigation**

#### 1.    The Parties' Arguments

The parties' arguments regarding the third element largely track their arguments regarding the first element. Amex argues that the third element is satisfied "[f]or substantially the same reasons that the issue here constitutes a controlling issue of law" and contends that "a holding from the Ninth Circuit that Lewis's claims are time-barred would avoid protracted and expensive litigation and end the lawsuit." (Doc. 26 at 7-8, cleaned up.)

In response, Lewis once again argues that "[r]eversal would not terminate the action, given the alternative timeliness and equitable tolling arguments." (Doc. 30 at 9.)

In reply, Amex reiterates that "a ruling that § 1658(a)'s four-year limitations period applies will not only materially advance the litigation, it will also guarantee its termination, for all of Lewis's claims were filed after four years, and Lewis has waived any argument that her claims are nevertheless timely" and "[a]t minimum, such a ruling could bar the whole suit and will bar at least some of Lewis's claims." (Doc. 31 at 9.)

2.    Analysis

"The 'materially advance' prong is satisfied when the resolution of the question may appreciably shorten the time, effort, or expense of conducting the district court proceedings." *ICTSI Oregon, Inc.*, 22 F.4th at 1131 (cleaned up). As many courts have noted, this inquiry "is closely related to the question of whether an issue of law is 'controlling' in that the district court should consider the effect of a reversal on the management of the case." *Lakeland Village Homeowners Ass'n v. Great American Ins. Grp.*, 727 F. Supp. 2d 887, 896 (E.D. Cal. 2010) (cleaned up). *See also Biederman v. FCA US LLC*, 2025 WL 1266907, *5 (N.D. Cal. 2025) ("Some district courts analyze this prong in conjunction with the first prong. And this makes sense, considering both prongs look to the materiality of the interlocutory appeal's impact on the case.").

The Court agrees with Amex that resolution of the proffered question may materially advance the ultimate termination of the litigation. As discussed in Part II.A above, the requested ruling has the potential to end the litigation and at a minimum may significantly curtail the scope of the litigation.

To be clear, certification will not always be appropriate in a case involving a controlling question of law regarding a statute-of-limitations issue. In *Nassiri*, although the district court found that the first element under § 1292(b) was satisfied because "[c]learly, the effect a statute of limitations has on a case is a controlling question of law, as any claims falling outside of the four-year statute would be precluded from litigation," the court found that the third element under § 1292(b) was not satisfied because even if "the Ninth Circuit accepted the appeal, and the Ninth Circuit reversed the court's order denying the motion for summary judgment, there would still be three claims that would be

left to be litigated.  Therefore, reversal of the court's order would not end the litigation . . . .  Further, this matter has been litigated, as the parties are well aware, for four years and the parties have recently submitted a joint pretrial order pursuant to court order.  Thus, based on the current stage of litigation, an appeal on this matter will not appreciably shorten the time, effort or expense of conducting the lawsuit." *Nassiri*, 2012 WL 3879887 at *2-3 (cleaned up).  But those considerations are not present here—all of Lewis's claims are potentially subject to the statute-of-limitations issue that Amex seeks to certify and Amex raised that issue, and then sought certification, at the very beginning of the case, before discovery even began.  Courts have concluded that certification is appropriate under analogous circumstances.  *Mosteiro v. Simmons*, 2022 WL 4483987, *6 (E.D. Cal. 2022) ("[T]he Court's ruling on the statute of limitations issue involves a controlling question of law . . . [and] resolution of an interlocutory appeal will wholly advance this case, which is still in its early stages with no imminent trial date, because whether Plaintiff is entitled to tolling . . . will be dispositive as to whether Plaintiff's case will move forward or be dismissed.  As a result, Defendant's request for an order for interlocutory appeal is GRANTED.").

> D. **Discretion**

>> 1. The Parties' Arguments

Amex identifies three reasons why the Court should exercise its discretion to allow certification: (1) "[s]tatute of limitations questions like this one are especially deserving of interlocutory consideration," both because such review will "serve[] judicial economy" and because statute of limitations questions often "evade appellate review," which "may explain why there are not more circuit-level decisions on the question"; (2) a ruling in Amex's favor could "spare countess defendants expensive, time-consuming litigation—and the pressure to settle that comes with it"; and (3) "[t]he limitations period here is 'unusual'" and "presents just the kind of clean, novel legal issue the Ninth Circuit should have a chance to address."  (Doc. 26 at 8-9.)

In response, Lewis does not specifically address the discretionary nature of

1    certification.  However, Lewis does raise the concern that "[t]o adopt Amex's position

2    would result in an inundation of interlocutory aspirations in multitudes of statute of

3    limitations rulings by district judges."  (Doc. 30 at 5.)

4           In reply, Amex contends: "Lewis does not deny the importance of the question

5    presented for certification.  Nor could she.  [SOX] is landmark federal legislation, and

6    discrimination claims are common.  Nor does Lewis deny that the answer to the limitations

7    question may long elude resolution by the Ninth Circuit absent an interlocutory appeal. . . .

8    Lewis warns of 'an inundation of interlocutory aspirations in multitudes of statute of

9    limitations rulings by district judges.'  But only the rarest limitations rulings will raise

10   unresolved questions of the meaning of federal law that have divided courts across the

11   country, as [the July 11, 2025] Order does."  (Doc. 31 at 9-10.)

12          2.    <u>Analysis</u>

13          As noted, "district court judges have unfettered discretion to deny certification,"

14   "[e]ven when all three statutory criteria are satisfied."  *Brizzee*, 2008 WL 426510 at *3

15   (citation omitted).  Even so, the Court concludes that certification is appropriate here.  As

16   discussed in earlier portions of this order, the proffered issue raises a somewhat novel

17   question of law that has generated conflicting results both within and outside the Ninth

18   Circuit.  If resolved in Amex's favor, the issue has the potential to end, or at least

19   significantly limit, this case.  Although certification under § 1292(b) must, of course, be

20   rare and reserved for exceptional cases, it is hard to think of an issue more suited for

21   interlocutory review than a pure question of law related to a potentially dispositive statute-

22   of-limitations defense raised at the very outset of the case.  *See, e.g.*, *SEC v. Rind*, 991 F.2d

23   1486, 1488 (9th Cir. 1993) ("The district court held that the Commission was not bound

24   by a statute of limitations . . . .  We have jurisdiction over this timely appeal pursuant to 28

25   U.S.C. § 1292(b)."); *Vitol Inc.*, 2022 WL 583998 at *1, *4 (choosing to "exercise its

26   discretion to certify an interlocutory appeal under 28 U.S.C. § 1292(b)" where the disputed

27   issue was "whether FERC's complaint was filed after the statutory limitations period had

28   expired"); *Mosteiro*, 2022 WL 4483987 at *6 (same).  *See also Woodbury*, 263 F.2d at 787

("Section 1292(b) was intended primarily as a means of expediting litigation by permitting appellate consideration during the early stages of litigation of legal questions which, if decided in favor of the appellant, would end the lawsuit. Examples of such questions are those relating to . . . a statute of limitations which the district court has decided in a manner which keeps the litigation alive but which, if answered differently on appeal, would terminate the case.").

     E.    **Stay Pending Appeal**

          1.    <u>The Parties' Arguments</u>

In the final portion of its motion, Amex argues that "[i]f the Court certifies its Order for interlocutory appeal, it should also suspend all existing deadlines and proceedings in this Court pending disposition of any further appellate proceedings." (Doc. 26 at 9.) "Without a stay pending resolution of an interlocutory appeal, the parties and the court will expend substantial resources, potentially all for naught." (*Id.*) Amex contends a stay is particularly warranted because Lewis previously engaged in "extremely wasteful" conduct, by litigating in the administrative forum for many years before filing this kick-out action just as the administrative proceedings were about to be resolved in Amex's favor, and thus a stay "would stop Lewis from further wasting time and resources." (*Id.*)

In her response to the certification motion, Lewis does not specifically address the stay request. (Doc. 30.) However, in her response to a subsequent request for a temporary stay of discovery filed by Amex, Lewis argues that discovery should proceed even if certification is granted. (Doc. 35 at 4-9.) According to Lewis, this is because the applicable test under *Nken v. Holder*, 557 U.S. 418 (2009), requires the party seeking a stay pending appeal to establish both a likelihood of success on the merits (which Amex cannot establish and has not even attempted to establish) and that the movant will suffer irreparable injury absent a stay (which Amex has not even attempted to establish). (*Id.*) Lewis further contends that she will suffer harm from a stay, as "[i]n a whistleblower retaliation case such as this, discovery delays are particularly prejudicial to the Plaintiff who carries the burden of proof," and that the scope of discovery will, in any event, "be more targeted

given prior productions in the agency proceeding." (*Id.*)

In its reply in support of its certification motion, Amex contends: "[S]tays are commonly granted pursuant to 'the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" (Doc. 31 at 10, quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).)

### 2.   Analysis

As noted, Lewis argues that the *Nken* standard governs Amex's request for a stay of discovery pending appeal while Amex argues that the *Landis* standard should apply in this context.  Although the tentative ruling issued accepted Lewis's position on this point, the Court now concludes, upon reflection and with the benefit of oral argument, that Amex is correct.  *See generally Kuang v. U.S. Dep't of Defense*, 2019 WL 1597495, *2-3 (N.D. Cal. 2019) (noting that "district courts in this circuit have catalogued a divide regarding the appropriate standard by which a district court is to exercise its discretion in whether to grant a stay pending an interlocutory appeal" and that "the Ninth Circuit has not addressed which test applies here" before concluding that "the relevant considerations here are more akin to those the *Landis* test is designed to address") (cleaned up); *Finder v. Leprino Foods Co.*, 2017 WL 1355104, *2-3 (E.D. Cal. 2017) (noting the "split in authority" on this issue before concluding that the court would "apply the *Landis* factors in determining whether to impose a stay").

*Landis* recognizes that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis*, 299 U.S. at 254.  When deciding whether to issue a *Landis* stay, courts must weigh "competing interests," which include "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (quoting *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th

Cir. 1962)).  "The proponent of a stay bears the burden of establishing its need."  *Clinton v. Jones*, 520 U.S. 681, 708 (1997).  "If there is even a fair possibility that the stay will work damage to someone else, the party seeking the stay must make out a clear case of hardship or inequity."  *Percy v. United States*, 2016 WL 7187129, *2 (D. Ariz. 2016) (cleaned up).

The stay analysis presents a close call.  On one side of the ledger, the absence of a stay could cause Amex to suffer hardship or inequity in the form of unnecessary discovery costs.  If Amex is correct about all of the disputed statute-of-limitations issues, there would be no need for any discovery in this case.  On the other side of the ledger, forcing Lewis to forgo discovery for months or years while the interlocutory appeal is pending could cause her to sustain harm.  During that period, memories may fade and documents may disappear—developments that would not be cured by reopening discovery following a ruling in her favor by the Ninth Circuit.  And because Lewis is the party with the burden of proof, she may be disproportionately damaged by those developments.  Furthermore, Lewis has identified reasons why even if the Ninth Circuit rules in Amex's favor on the proposed certified issue, such a ruling may not be fully dispositive.

The stay calculus here must also account for a unique consideration—the fact this action was preceded by years of related proceedings between the parties in an administrative forum.  During oral argument, Amex suggested these earlier proceedings bolster the case for a stay, because they show that Lewis already had ample opportunity to examine witnesses under oath and obtain relevant documents (and, thus, she would not be harmed by pausing further discovery pending the Ninth Circuit's ruling).  In response, Lewis identified several important witnesses who were not examined during the administrative proceedings.  Lewis also stated (although this point appears to be disputed by Amex) that certain documents were not produced by Amex during the administrative proceedings.  Finally, Lewis avowed (although this point was also disputed by Amex) that despite her need to follow up as to certain witnesses and documents, the overall scope of discovery in this action will be less expansive than in a typical case because she has no

intention of issuing duplicative demands for materials that were previously produced.

In light of all of these considerations, and again acknowledging that the issue presents a close call, the Court concludes a stay of discovery is not warranted. Most important, Lewis has established a "fair possibility" that she will be damaged by a stay. *Percy*, 2016 WL 7187129 at *2. This possibility of harm arises from her desire to depose, without further delay, certain key witnesses who were not examined during the administrative proceedings (and who will be asked to testify about events that happened many years ago). Amex thus bears the burden of "'mak[ing] out a clear case of hardship or inequity.'" *Id.* (citation omitted). Amex has not done so, particularly given that the scope of discovery is likely to be less expansive than in a typical lawsuit. This outcome may not achieve all of the efficiencies that the certification process offers, but it represents, in the Court's view, the best way to balance the competing interests at stake here.

Accordingly,

**IT IS ORDERED** that:

1.      Amex's motion for an order permitting interlocutory appeal (Doc. 26) is **granted in part and denied in part**. More specifically, the Court grants Amex permission to appeal from the July 11, 2025 order denying Amex's motion to dismiss but denies Amex's request to suspend all deadlines and stay proceedings in this Court pending Amex's pursuit of the interlocutory appeal.

2.      The parties are directed to meet, confer, and develop a Rule 26(f) Joint Case Management Report, which must be filed within 14 days of the date of this order. It is Lewis's responsibility to initiate the Rule 26(f) meeting and preparation of the Joint Case Management Report. Amex shall promptly and cooperatively participate in the Rule 26(f) meeting and assist in preparation of the Joint Case Management Report.

Dated this 5th day of November, 2025.

Dominic W. Lanza
United States District Judge

- 17 -