**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

_____

Sophia Lewis,                    )
                                 )   No.  2:24-cv-03370-DWL
        Plaintiff,               )
                                 )
        vs.                      )        Phoenix, Arizona
                                 )        November 4, 2025
American Express Company,        )        11:04 a.m.
                                 )
        Defendant.               )
_____  )

**BEFORE:   THE HONORABLE DOMINIC W. LANZA, JUDGE**

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**ORAL ARGUMENT**</u>

Official Court Reporter:
Jennifer A. Pancratz, RMR, CRR, FCRR, CRC
Sandra Day O'Connor U.S. Courthouse, Suite 312
401 West Washington Street, Spc 42
Phoenix, Arizona 85003-2151
(602) 322-7198

Proceedings Reported by Stenographic Court Reporter
Transcript Prepared by Computer-Aided Transcription

**A P P E A R A N C E S**

For the Plaintiff:

    TM GUYER & FRIENDS PC
    By:   Stephani L. Ayers, Esq.
    P.O. Box 1061
    Medford, OR 97501

For the Defendant:

    ORRICK HERRINGTON & SUTCLIFFE LLP
    By:   Robert M. Loeb, Esq. (Via Zoom Videoconference)
    2100 Pennsylvania Ave., NW
    Washington, DC 20037

**P R O C E E D I N G S**

(Proceedings commenced at 11:04 a.m.)

THE COURTROOM DEPUTY:  We're on the record in Civil Case No. CV-24-3370, Sophia Lewis versus American Express Company, set before the Court for oral argument.

Counsel, please announce your appearances.

MS. AYERS:  Good morning, Your Honor.  I'm Stephani Ayers, counsel for plaintiff.  And with me is Ms. Sophia Lewis.

THE COURT:  Welcome.

MS. LEWIS:  Morning.

MR. LOEB:  And Robert Loeb for American Express.

THE COURT:  Welcome to you as well.

All right.  We are here for oral argument on the motion for permission to take an interlocutory appeal.  As the parties, I hope, are aware, I issued a tentative ruling on October 24th at Docket 38 to help focus the argument.  I find that that tends to streamline things and really focus or at least let the parties know what I'm thinking heading into here, so if you disagree, you can tell me why I got it wrong.

So I'll start first with the movant, Mr. Loeb.

MR. LOEB:  Thank you, Your Honor, and we very much appreciate the thoughtful tentative ruling.  I have discussed it with the other side, and you suggested in your tentative ruling that the discovery limited -- at this point would be targeted, limited.  We reached out to the other side to say,

well, what does that mean?  Would there just be a few documents?

They made it clear to us there would be numerous depositions, in which case we -- our position is that there should be a stay of discovery, and we want to discuss just that aspect of your tentative ruling.

Let me start with the standard that this Court cites in its tentative ruling.  This Court cites the *Vitol* case and the four-part standard there, which is the well-known *Hilton/ Nken* standard.  But that's the standard that applies when a Court is granting a stay of its own substantive judgment, affirmative relief or injunctive relief, and it's a stringent standard requiring showing of the likelihood of success on the merits, showing irreparable harm, et cetera.

The standard that applies here is not that standard. It's the standard we cited in our filing of the *Landis* -- Supreme Court *Landis* case, where staying a proceeding in light of an appeal or of a parallel case, which is not -- which is just a matter of the Supreme Court in *Landis* said it's a discretion of case management.  There's no need to show a likelihood of success.  There's no need to show irreparable harm.

We cited the *Landis* case.  We sought a stay of discovery.  The plaintiffs, in responding to our motion, never even responded or opposed a stay of discovery.  There's only a

later, in reference to the case management order, the plaintiff cited -- for some reason started discussing this issue and cited the wrong standard, which I think led the Court astray, and we didn't have a chance to respond to that.

But the law is very clear on this:  Every district court in this circuit that has actually engaged on this issue as to which standard actually applies in this kind of context applies the *Landis* standard.  That's explained in the *Kuang* case, K-U-A-N-G, *versus Defense Department*, 2019 Westlaw 1597495, a Northern District of California case, which has then been cited and followed by dozens of other cases, including at least four recent District of Arizona cases.  They all follow *Landis* or *Kuang* in this context in saying that the *Landis* standard applies in this context.

Most recently, we have Judge Liburdi's decision from June 25th of this year in the *American Encore* case *versus Fontes*, at 2025 Westlaw 1839464.  We have Judge Snow's decision from a couple years before that in *Sweet versus City of Mesa*, at 2022 Westlaw 912561.  We have Judge Teilborg's 2022 decision in *Johnson versus City of Mesa*, at 2022 Westlaw 137619.  We have Judge Rayes' decision in *Isaacson versus Brnovich*, at 2021 Westlaw 5449043.  There's dozens more that I could cite.

You know, so there's some orderliness as to some courts, they get confused when you just say "stay" and don't think about it, might apply the wrong standard.  But every

court that's actually engaged on it, said what standard ultimately applies in this context, has said that it is the *Landis* standard.

So under that standard, it's not then a question of irreparable harm.  It's not a question of likelihood of success.  We think we'd get a stay under those standards, but that's not the right standard.

Under *Landis*, you look at what damage is going to be inflicted by a stay; and the answer is here, none.  What is -- great hardships are going to be imposed by staying the deadlines in discovery?  And here there really are no substantial hardships.

In fact, a denial of the stay would give a hardship upon us.  We would have to now, after having gone through years of an administrative proceeding with nine witnesses and over 50 exhibits, to have to now subject American Express to additional discovery, to additional depositions while this potentially dispositive appeal is pending is simply an improper hardship in our view.

And the third and most important factor under *Landis* is just the orderly course of justice.  And as the courts have measured in terms of simplifying or complicating the case that would result from a stay, and here it would very much simplify it.  We would just go up, decide whether this case is timely or not; and if it is timely, whatever -- or some part of it is

still timely, it will come down to this Court; and whatever discovery is appropriate -- we don't think there really is after having nine sworn witnesses before the administrative proceedings -- this Court can proceed from there.

In the absence of a stay of discovery, things will get very disorderly and very complicated, because there will be very much disputes between the parties about whether there should be any discovery and what it should be.  I believe if there's going to be -- if they're going to be seeking depositions, we're going to be moving for an early summary judgment, and saying that they need to have affidavits under Rule 56(e) to support any further discovery, given all the sworn materials that are out there, all the exhibits that have already been exchanged between the parties.

But we don't need to have these prolonged filings and disputes and disorder about discovery.  The appropriate thing under the *Landis* standard here, as many courts and pretty much all the courts that take up -- as you know, not every court, but one of the points of having an interlocutory appeal like this is to streamline it and to make sure that the Court and the parties don't have to expend any further resources if in fact a dispositive issue can be decided on appeal.

And we would ask that this Court reconsider that aspect of its tentative order and to stay the discovery and other deadlines while that appeal is pending.  We are happy to

have that appeal proceed -- as I mentioned to opposing counsel, I said, look, if you want us to expedite that appeal, we're happy to have a mutual motion to the Ninth Circuit to that effect.

We're not trying to delay things, but it was in a matter of orderly simplifying matters that would result from the appeal going forward.  At this point it's appropriate in our view to stay all the deadlines and all the discovery and to avoid these disputes that will inherently come if discovery is allowed and which will lead to summary judgment motions; and having a summary judgment decided on the merits while this dispositive issue is coming up is certainly both disorderly and not a good use of our resources or the Court's time and resources.

I'm also happy to address the other part of the tentative decision about we think the Court appropriately certified it for appeal.  Of course, now we have to petition the Ninth Circuit and convince them that we're right; and if they do agree, we'll proceed a case in the Ninth Circuit and we'll find out if in fact this case should be moved forward.

THE COURT:  All right.  Thank you.  I have a couple questions.

One, on the question of whether the *Nken* standard or the *Landis* standard applies, I think you said that every court within the Ninth Circuit has applied *Landis*.  The tentative

cites the *Vitol* case from the Eastern District of California. Isn't that a case from within the Ninth Circuit that applies the *Nken* standard?

MR. LOEB:  I tried to be clear that -- what I said was every District Court that has engaged on the issue as to which standard actually applies, in this kind of case where you have not a stay of a judgment or an injunction but just a stay of deadlines while a certified appeal is pending, that every Court that's engaged on it has looked towards the *Kuang* opinion and agreed with its reasoning that the Rule 62 standard and the more stringent standard under *Hilton* and the *Nken* case applies only in the circumstance where you're actually trying to stay an affirmative judgment.

So similar to tomorrow there's going to be the tariff case argued in the Supreme Court, court issues there saying that tariffs are illegal, but then there's a question, do you stay that judgment pending further review of that?  That, of course, requires meeting all the *Hilton* and *Nken* standards. This is very different.

So I didn't mean to suggest there's complete uniformity in the district courts around the country on these issues, because a lot of times folks just cite the wrong standards and don't engage on the issues.  And often the standards just don't matter because either way it will come out the same difference.  And we think here we would also prevail

under the *Nken* and *Hilton* standard, but the -- you know, this is really a matter of this Court's discretion under *Landis* as a case management, and you have broad discretion.  But it would be legal error for you to apply the incorrect standard, and I think we don't want to be in a situation where we are then seeking review in the Ninth Circuit regarding the stay issue here.

So I think better to address it -- to look at those cases, the *Kuang* case, the *Landis* case, and the explanation of why those are the appropriate standard in this context, to follow those, and to use this Court's judgment as to whether we meet that standard.

THE COURT:  All right.  And then a different -- let's say you're correct about the *Landis* standard.  I still fundamentally -- you know, it's not that different from *Nken*. Fundamentally, I'm weighing a lot of different factors.  I'm trying to make sure that there's not disorder, but I also don't want to prejudice either side unfairly.

And I think I'm not sure I totally agree with you.  I thought I heard you say that there would just be zero hardship or damage to the plaintiff if I stayed discovery for potentially two years while this case goes up on appeal.  That can't be right.

I mean, this is -- even if you're -- even if you're ultimately correct that the balance favors you, it seemed a bit

exaggerated and hyperbolic to deny that there would be any prejudice whatsoever to the party with the burden of proof to have the pause button on discovery for two years.

MR. LOEB:  Well, this is an unusual case where it's not a case where memories are going to fade or where it's a need to have discovery at this very moment in order to preserve the record.  We already had a multi-year proceeding where they were able to call multiple witnesses under oath.  We had nine witnesses in that hearing under oath, and we have substantial records from that hearing.  We had 42 joint exhibits in that case and multiple other exhibits, so there were 50 to 55 different exhibits that were presented in that hearing.

And again, if there were some additional documents that they need for some reason at this juncture, I don't -- you know, they can let us know.  But to say now they need to depose all those same people over again is simply just imposing costs on us for no -- that's imposing damages on us by letting this move forward.

The damage on them is there's delay in the case.  But delay in getting your ultimate recovery is not usually considered to be a hardship or damages in the -- under the *Landis* standard.  It would be if -- there would have to be some ongoing injury or some prejudice as far as the factual record would be diminished over time, et cetera.

But just the mere delay itself is not construed to be

the type of hardship or damages inflicted by a stay.  But even if there is some, none of that would warrant allowing discovery to be imposed at this juncture where the whole case could be dismissed if we ultimately prevail on the appeal.

I mean, the major difference between the standards is -- and this Court, you know, cited the -- that we have to show a strong likelihood of prevailing on the merits in the Ninth Circuit.  I know this Court disagrees with us on the merits ultimately in the case, and so I think taking that factor off the table very much changes the dynamic of how you view these factors.

Also, we just don't have to show irreparable -- that we're being irreparably harmed.  It's really just a question of what is -- whether anyone is being exposed to substantial damage, substantial hardship at this context.  Really, there's not -- unless this Court denies the stay, the defendants will be exposed to substantial hardship in having to undergo these depositions that they're seeking.

And really, then, it just comes down to what is an orderly course of justice in this Court's discretion, this Court's judgment.  But it looks at whether we're trying to simplify things or complicate things and whether there's going to be order or disorder by allowing the case to continue.

And by allowing the case to continue, we're going to have one side saying there's going to be many, many

depositions.  They can clarify what their view is on that to you.  One of them's saying that there should be actually no depositions, and really there's no even need for paper discovery or they need to justify it.

There's a likelihood that if there is going to be some requests by them for discovery that we just immediately move for an early summary judgment and have a Rule 56(e) pleading battle as to whether it's justified that they have summary judgment move forward, or whether there's actually a need for further discovery in light of the rules of Rule 56.

But none of that is necessary here where we have a dispositive issue on appeal.  So we don't need this kind of disorder.  We don't need that kind of complications at this stage or the costs of discovery be imposed on the defendants when they've already had the costs of this multi-year administrative hearing with discovery and with nine witnesses under oath which has now preserved any of the issues and the factual matters in this case.

So it's a very unusual case in that this is not a case where we're just trying to develop the facts and we need to get this witness's deposition because we don't know what he's going to say and he might forget two years from now.  We have those same people who have testified about all the relevant information.  Their sworn testimony is of record.  And that really, I think, tips the scales -- trying to preserve the

memories of those at this juncture is a factor.  That's not a factor in this case where we have a really established not just administrative record but an ALJ trial with sworn witnesses and over 50 exhibits.

So I agree with you, there's no -- it's a matter for your discretion, but I think applying the correct standard where you're not looking at likelihood of success, where you're not looking for irreparable damage, and you're just weighing the -- whether there is substantial damage or hardships to any of the parties and looking at whether there's disorder and complications, the only disorder and complication comes from letting this case move forward at this juncture.

THE COURT:  All right.  Let me just -- one more question, sort of to play devil's advocate.

Let's say you're right that nobody's entitled to any more discovery in this case, and if I weren't going to certify this or if the Ninth Circuit were to deny it, you would just immediately move for summary judgment.  If that's the case --

MR. LOEB:  That --

THE COURT:  -- what efficiency am I gaining by certifying the statute of limitations issue for immediate appeal if you think that you're about to win on the merits anyway by filing a summary judgment motion tomorrow because the record doesn't need to be developed?

MR. LOEB:  That's a good question, Your Honor.  I

think the other side will, of course, oppose that, so -- but assuming that you would agree with us, I think it would be -- those would be substantial motions which get deep into the record here, and I think it will be clear that there was no violation here by American Express.  There's no protected activity that was -- you know, it will show that.

And -- but as you know, summary judgment briefing can be extensive and can be both costly for the parties and time-consuming, and, you know, for the Court.  And we already have -- I think the issue about whether this case is timely or not is a straightforward one which could preclude the whole need for that then next level of proceedings here.

But to be sure, we do agree this case can just be decided based on the sworn record that's before this Court through the administrative record and on the exhibits.  They'll argue they have a right to de novo review and will argue, you know, that they should have all new depositions and all that.

There will be disorder and complications about how to handle this situation, which this Court will have to address. We think you should -- it's clear that you should address those things in our favor, but to be -- I do think they do raise some complicated issues and that the most simple, straightforward thing to do is to let this appeal go forward, which not just would be beneficial to this case because we think it will just end this case without the need to go through summary judgment,

but also I think will be beneficial to the community at large because these are common actions in the interaction of, like, how these actions are brought and when they should be brought is an important one which ultimately would be helpful for all the litigants in the Ninth Circuit to have clear.

You know, that by itself isn't a reason to certify, but it's one thumb on the scale as to why it's appropriate to have this case move forward under 1292(b).

THE COURT:  All right.  Thank you.

Ms. Ayers.

MS. AYERS:  Yes.  Thank you, Your Honor.

So basically --

THE COURT:  Can you just make sure one of the mics is by you.

MS. AYERS:  Yes.

THE COURT:  Thank you.

MS. AYERS:  Thank you.

Basically, this sounds like it boils down to a dispute that American Express doesn't want us to take depositions.  And I think I heard counsel say all new depositions, but there were no depositions in the matter below other than Ms. Lewis.  She was the only one who sat for deposition.  So these would be the first depositions of these witnesses that we want.

And second, they cite that there were nine trial witnesses, nine trial witnesses.  Five of those were

Mrs. Lewis's.  Those were all plaintiff witnesses, those five. They called in four individuals.  They did not call in the manager who was the target of her disclosures.  They did not call in any of the executive leadership who were involved.

And trial testimony is significantly different than the scope of deposition testimony.  Obviously, in depositions, we're going to be seeking a broader set of information than the focused presentation that defense counsel would have a witness give.

This issue is completely within your discretion.  The Court cited *Vitol*, not plaintiff, so I reject the assertion that I somehow led you astray.  And your order did not limit discovery.

So while I think you worked hard to work out a compromise between the parties' interests, our interest being in moving the case forward in terms of discovery and preserving memories and locking in deposition testimony that's never been locked in before, and their interests in getting resolution on an appeal issue that they think will cause the dismissal of the case, I think you worked hard to balance those interests.

And while we're here trying to compromise on those things, American Express won't compromise because they're asserting to you that depositions are extremely burdensome to them.

Now, I've prepped hundreds of witnesses for

depositions.  Depending on the scope of their testimony, it's two to eight hours, and then you sit for the deposition.  We take very focused depositions that are typically under three hours for each witness.  I'm not saying we'll do that each time.  It depends on the complexity of the issues.

So -- and we made clear in our opposition to the stay that we're not starting discovery from scratch.  The last thing I want to do is have my team wade through documents that we've seen before hundreds of times, but we want focused issues that were basically missed in the proceeding below for whatever reason.  I wasn't counsel in the proceeding below.

You asked for new important information, not for us to reargue the positions that we did in our briefing.  And you're probably aware, but I checked.  The Ninth Circuit current processing time for appeals is anywhere between 12 to 20 months.  And it depends on oral argument as well, which I assume American Express will want.

But what I didn't know is there's no automatic expediting for this type of interlocutory appeal.  There is some automatic expediting for these other types of appeals.  We don't fall into that category.  So there's no guarantee that we'll be able to expedite the appeal even if we agree on a motion to do so.  We have to show good cause, and then the Ninth Circuit may or may not grant it.  So we could be looking at an up to two-year delay.

That's why the Court not staying this case and allowing us to proceed is so very important.  Witness memories will fade.  Witnesses have not given depositions.  Witnesses have not testified at trial.  We have a number of them, including Mr. Wiley King and Ms. Julie Lomich [sic].

I'm sure that we could -- if we filed an agree motion that would carry more weight, but we're not certain that defense counsel would agree to that at this point because they have various reasons to not do so.

So we're not here to waste your time, but we don't want to lose any ground.  We want to move forward with discovery, and then when -- if they would like to file for summary judgment, that's the procedure.  They'll be able to do that.  But the point to reconsider staying the case would be after that summary judgment, if you want to do that, and the appeal is still not decided.

We're quite confident that they're certifying the legal issue of just the Sarbanes-Oxley statute of limitations, but we still have issues to deal with around equitable tolling, and we still have the issue of our interpretation of the 180-day wait that won't be dealt with if you -- when you certify that particular legal question.

These tolling issues would be intertwined with the merits of the case, so that's important to continue with discovery.  And the investment in time for depositions mainly

is pretty minor compared to the harm that the plaintiff will suffer, and frankly, I think the defense would suffer as well by not having their witnesses testify when they are the most aware of what happened.

We think the Ninth Circuit is highly likely to reject the defendant's stance on the statute of limitations since it would undermine congressional purpose.  We think the Ninth Circuit's going to agree with you and your colleague from this court.  This was not a hard question for the Court to answer, and it will not be a hard question for the Ninth Circuit either.

We see little to no appreciable chance the Ninth Circuit would rule otherwise, and to stay discovery would be to delay us all for two years, potentially, with no good grounds to do so.

Thank you, Your Honor.

THE COURT:  All right.  The follow-up questions I have, it seems to me that the devil's in the details about exactly what you anticipate is going to happen in discovery. So who were the four Amex representatives who were -- who testified during the administrative proceeding?

MS. AYERS:  Steve Lindstrom, Jeanne Stout, Lavinel Lotrean, and Jeremy Peacock.

THE COURT:  And who are the -- I won't hold you to this if it changes later.  Who do you think are the three most

critical Amex people that you would like to depose as part of the discovery process in this case?

MS. AYERS:  It would start with Mr. Wiley King, Julie Lomich [sic], and then one of those, either Lindstrom or Stout. Because like I said, respondents called them in trial, and they had more condensed presentations than you would do in a deposition.

The other two witnesses, Lavinel and Jeremy, as I understand it, were subordinates to Ms. Lewis who raised some concerns or complaints about her management style.

MS. LEWIS:  No.  No, they were not.

MS. AYERS:  Okay.  Sorry.

THE COURT:  So to -- so if I'm understanding it correctly, there are at least two Amex witnesses who you view as critical who did not testify during the administrative proceeding?

MS. AYERS:  Correct.  And did not give a deposition.

THE COURT:  All right.  Separate from the question of depositions, when it comes to document discovery, give me the difference between what you were able to obtain during the administrative proceeding and what you would like to obtain as part of the discovery process in this case.

MS. AYERS:  Thank you, Your Honor.  I will give you a few categories of documents.

We -- we are missing performance appraisals for the

complainant that she did not have.

There's meeting documentation from a February 5th, 2020, meeting that occurred where they suspended plaintiff, and we don't have contemporaneous notes of that.

We have incomplete documents regarding Wiley King, who was plaintiff's direct supervisor and one of the key alleged retaliators.  And we sought performance appraisals on any discipline, and plaintiff had filed an ethics complaint against him, but the investigation files were not produced to us with regards to any complaints she filed.  We didn't get his personnel file, complete history.

This was -- this was interesting.  They worked on a platform of Microsoft Skype for Business, and then when they -- they transferred platforms in 2020 to Slack.  So while they got Slack documents, the relevant instant messaging programs, we received no Skype messages.  And Lewis told us that those were heavily used between management, so no one confirmed for us that they searched Skype.  So we need interrogatories on exactly what communications were being used and when and how those were retained and, you know, things like that to ensure the complete production.

The defendant represented below that there were like five comparator terminated employees, but they didn't produce the employee files that would allow us to determine how in fact they were comparators.  They just provided us a list.  And they

didn't provide us any discipline files for those employees or any investigation files.

The executive, Julie Tomich, Ms. Lewis believes from her observations -- well, she also reported to Ms. Tomich issues.  And Ms. Tomich did not testify.  Ms. Tomich did not give a deposition, but Ms. Tomich was also heavily involved.  And yet there's missing communications all throughout between her and any of her subordinates about her involvement in these decisions against Ms. Lewis.

We don't believe that we have the complete policy documents that govern this issue.

And then I also see we had noted kind of the key witnesses.  You asked me about this, and I missed one.  So we had Wiley King, Steve Lindstrom, Jeanne Stout, Julie Tomich, Dave Rabkin, and Sandra Diaz would be kind of the key set.  I wouldn't say we'd want to be limited at this point, but that would be our -- where our focus is.

And then we didn't -- in each of those -- we didn't take depositions as to the greater scope of Ms. Lewis's concerns and how she was handled and what policies applied and what they did in between.  We only have their trial testimony that didn't speak to all of those issues.  So that would be our Tier 1 kind of set of witnesses.

And while I appreciate that opposing counsel wanted you to rule based on this -- like, theoretical disputes between

the parties about the scope of discovery and this and that, like, we haven't even reached that point where there would be those issues.  If it devolved to something you didn't feel like you could manage, if we couldn't resolve it on ourself, you could certainly, you know, kind of revisit your decision.  But to stop discovery based on hypothetical arguments that might occur is not really appropriate in this matter.

So thank you, Your Honor.

THE COURT:  All right.  And I guess, you know, one of the things that I had relied on in the tentative was the idea that the discovery in this case was going to be more limited and targeted than it might be in a usual case because it was preceded by the administrative proceeding.

Hearing what you just said right now, doesn't sound to me necessarily that it's going to be that targeted and limited.

MS. AYERS:  I think so, Your Honor.  I'm giving you like the categories of things that we're missing, so they've already done the searches for these types of documents.  Those requests went out years ago.  They would have collected the materials; they would have sorted the materials.

It's that they were then ordered to produce the missing gaps thing, and they did not is my understanding of what's below.  So it would be, you know --

THE COURT:  Let me understand that, because I'm not sure I've heard that before.

Are you saying that the arbitrators ordered Amex to produce documents and they just didn't comply with the production order?

MS. AYERS:  This is my understanding of what happened below.  I wasn't there.  There were certain documents that the Court agreed should be produced and they were not produced.  And then trial had come and they were doing trial without things that they had identified as important.

The judge referenced that and said we'll circle back to it, but I don't -- I can't find anything in the record as to what happened after that.

THE COURT:  Okay.

MS. AYERS:  And those documents are not in our record.

So I was talking as to category of documents.  So certainly there will be policies, for instance.  We have a lot of policies, but if there's like a targeted policy that we're missing, our forensic analysis was we're missing certain things within these sets of documents.

So our intent is not to waste anybody's time and say produce everything again, but rather to go through and say, here's specifically what we're missing, and then if you have anything in these areas that we didn't ask for.

THE COURT:  Thank you.

Your final -- you know, we've I think understandably focused mostly here on the question of the stay.  Is there

anything you wish to be further heard on on the analysis as to whether I should certify?

MS. AYERS:  Certify the appeal, Your Honor.  We'll -- you did thorough analysis, and that's your decision.  We understand.

THE COURT:  Okay.  Thank you.

MS. AYERS:  Thank you.

THE COURT:  All right.  Mr. Loeb.

MR. LOEB:  Well, I think you accurately said that doesn't sound like very targeted or limited discovery at this juncture, and I think it's clear there's going to be substantial disputes about what is and should be allowed at this stage.  It's certainly going to impose substantial burdens and costs on the parties, and it would -- all of that would be -- the additional witnesses, the numerous documents she was talking about would be unnecessary if this case is untimely and should just be dismissed.  I think that all counsels in favor of granting the stay.

She points out that she wasn't counsel below and she regrets that this wasn't developed.  It was the same law firm, Your Honor, that's representing her here that was representing her in the administrative proceeding.  They called these witnesses.  If they wanted to call these additional folks at that hearing, they could have done that too.  They just want a second bite.

They know the ALJ wrote like an 85-page decision on why there's no protected activity here and why this is a meritless case.  They realized the record they established was insufficient.  Now they're trying to impose additional costs on us to try to get us to settle, and they're trying to, you know, get a second bite at the apple, which, you know, they're allowed to bring this type of action if it's timely.  Fine.  But we should know whether it's timely first before you're imposing these really substantial additional discovery costs on the defendant in this case.

THE COURT:  Do you just -- I appreciate that.  Do you factually disagree with the representation that the witnesses that were identified by Ms. Ayers did not testify during the administrative proceeding?

MR. LOEB:  Well, we have the list with the witnesses, and we don't -- and Mr. King didn't testify, so I don't dispute that.  But I dispute this notion that we were told to produce documents and we didn't.  That's just -- I'm being told by the folks from the -- who handled the administrative proceeding, you know, that that is just not true, that we produced everything we were supposed to produce, and the judge there issued a very detailed ruling, which you have seen, I think.

So -- the administrative law judge.  And if they had complaints about that, they could have raised that with the administrative law judge at the time.

But it's the same law firm.  They're just trying to impose these additional costs, recognizing that that's their best leverage at this juncture to try to get us to settle, and that's simply not fair to us.

THE COURT:  All right.  Thank you.

Anything else?

MR. LOEB:  I don't think so, Your Honor.  We appreciate being heard.

THE COURT:  All right.  Anything else, Ms. Ayers?

MS. AYERS:  I just want to clarify one point.  I have joined this law firm, the nonprofit Government Accountability Project, in June as a lawyer and staff member.  Prior to that point, I was only a contractor.  I didn't have insight into other contractors' litigation, so I was never involved in the Lewis case at any point prior to taking over for the federal court action, so I cannot speak to exactly what decisions were made and why and I can't really inquire into that.

So we're trying to start here fresh and do it -- you know, now I'm a deputy litigation director.  I'm supervising all the litigation that the Government Accountability Project has, and so we're trying to do it to the standard that I think is appropriate.

So thank you.

THE COURT:  Okay, thank you.

All right.  Well, I want to thank counsel for the

argument.  I'm going to take this under advisement.

I will say, you know, without committing to anything, I think it's unlikely that I'm going to revisit the analysis as to whether to certify, but I'm going to take a closer look at the stay question.  I have a hunch, Mr. Loeb, you might be right, that *Landis* rather than *Nken* is the proper standard here now that you've brought it up and I've thought more about it.

But I'm going to need to -- just because even assuming that's the standard, which I'll look more into, I'm going to then need to take a fresh look at how the various considerations apply under *Landis* and how it should turn out. And so I know the parties are waiting for an answer, so I'll try to get out something quickly.

So thanks again for the argument, and I'll take this under advisement.

(Proceedings concluded at 11:41 a.m.)

UNITED STATES DISTRICT COURT

C E R T I F I C A T E


          I, JENNIFER A. PANCRATZ, do hereby certify that I am duly appointed and qualified to act as Official Court Reporter for the United States District Court for the District of Arizona.

          I FURTHER CERTIFY that the foregoing pages constitute a full, true, and accurate transcript of all of that portion of the proceedings contained herein, had in the above-entitled cause on the date specified therein, and that said transcript was prepared under my direction and control.

          DATED at Phoenix, Arizona, this 7th day of November, 2025.




                         s/Jennifer A. Pancratz_____
                         Jennifer A. Pancratz, RMR, CRR, FCRR, CRC