Amy J. Gittler (State Bar No. 004977)
Amy.Gittler@jacksonlewis.com
JACKSON LEWIS P.C.
2111 E. Highland Avenue, Suite B-250
Phoenix, AZ 85016
Telephone: (602) 714-7044

David Nenni (admitted *pro hac vice*)
David.Nenni@jacksonlewis.com
JACKSON LEWIS P.C.
201 E. 5th Street
Cincinnati, OH 45202
Telephone: (513) 898-0050

Michael Delikat (admitted *pro hac vice*)
mdelikat@orrick.com
Mark Thompson (admitted *pro hac vice*)
mthompson@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 W 52nd Street
New York, NY 10019
Telephone: (212) 506-5000

*Attorneys for Defendant American Express Company*

Stephani Lynne Ayers (*pro hac vice*)
Government Accountability Project
1612 K St NW Ste 808
Washington, DC 20006
813-382-7865
stephania@whistleblower.org

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Sophia R. Lewis,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>American Express Company,<br><br>　　　　　Defendant. | Case No:  2:24-cv-03370-PHX-DWL<br><br>**JOINT CASE MANAGEMENT REPORT** |

Pursuant to the Court's Order Requiring Rule 26(f) Report (Doc. 32), the parties submit the following Joint Case Management Report.

1.    The parties who attended the Rule 26(f) meeting and assisted in developing the Joint Case Management Report;

**For Plaintiff**: Stephani Ayers, Government Accountability Project

**For Defendant**: Amy Gittler, David Nenni, Jackson Lewis

Michael Delikat, Mark Thompson: Orrick, Herrington & Sutcliffe LLP

2.    A list of all parties in the case, including any parent corporations or entities (for recusal purposes);

**Plaintiff:** Plaintiff is Sophia Lewis; Defendant is American Express Company

**Defendant:** Plaintiff is Sophia Lewis. The named defendant is American Express Company which is the parent company of American Express Travel Related Services Company, Inc., which was Plaintiff's former employer and should be the named defendant.

3.    Any parties that have not been served and an explanation of why they have not been served, and any parties that have been served but have not answered or otherwise appeared;

None. All parties have been properly served and have appeared in this action

4.    A statement of whether any party expects to add additional parties to the case or otherwise to amend pleadings;

**Plaintiff**: Plaintiff does not anticipate adding additional parties or amending the complaint at this time. However, Plaintiff reserves the right to seek leave to amend should discovery reveal the need to add additional parties or claims or plead the matter in a different manner.

**Defendant:** None. Plaintiff should not be permitted to reserve the right to amend the pleadings. After a full evidentiary hearing, Plaintiff is aware of all the issues and potential claims.

5.    The names of any parties not subject to the Court's personal (or *in rem)* jurisdiction;

None.  All parties are subject to the Court's personal jurisdiction.

6.    A description of the basis for the Court's subject matter jurisdiction (see the accompanying footnote), citing specific jurisdictional statutes;[1]

**Plaintiff:** The Court has subject matter jurisdiction over this action pursuant to federal question jurisdiction: 28 U.S.C. § 1331. This action arises under the whistleblower protection provisions of the Sarbanes-Oxley Act of 2002 ("SOX"), specifically 18 U.S.C. § 1514A(a)(1)-(2), which prohibits retaliation against employees who report conduct they reasonably believe constitutes a violation of federal securities laws or fraud against shareholders.  Plaintiff brings this action pursuant to SOX's "kick-out" provision, which permits a complainant to bring an action for de novo review in

---

[1] If jurisdiction is based on diversity of citizenship, the report shall include a statement of the citizenship of every party and a description of the amount in dispute. *See* 28 U.S.C. §1332. The parties are reminded that (1) a corporation is a citizen of the state where it is incorporated and the state of its principal place of business and (2) partnerships and limited liability companies are citizens of every state in which one of their partners, owners, or members is a citizen. *See* 28 U.S.C. §1332(c); *Johnson v. Columbia Props. Anchorage, LP,* 437 F.3d 894, 899 (9th Cir. 2006). As to individual natural persons, an allegation about an individual's residence does not establish his or her citizenship for purposes of establishing diversity jurisdiction. *Steigleder v. McQuesten,* 198 U.S. 141, 143 (1905). "Tote a citizen of a state, a natural person must first be a citizen of the United States. The natural person's state citizenship is then determined by her state of domicile, not her state of residence. A person's domicile is her *permanent* home, where she resides with the intention to remain or to which she intends to return." *Kanter v. Warner-Lambert Co.,* 265 F.3d 853, 858-59 (9th Cir. 2001) (emphasis added). The parties are further reminded that the use of fictitious parties ("John Doe" or "ABC Corporation") does not create diversity jurisdiction. *Fifty Assocs. v. Prudential Ins. Co. of Am.,* 446 F.2d 1187, 1191 (9th Cir. 1970).

3

United States District Court if:(1) The Secretary of Labor has not issued a final decision within 180 days of the filing of the administrative complaint; and (2) The delay is not due to the bad faith of the claimant.  18 U.S.C. § 1514A(b)(1)(B)

**Defendant:** Federal Question Jurisdiction. Plaintiff brings her case pursuant to the anti-retaliation provisions of the Sarbanes-Oxley Act ("SOX"), 18 U.S.C. § 1514A.

7. A short statement of the nature of the case (no more than 3 pages), including a description of each claim, defense, and affirmative defense:

**Plaintiff:** This is a Sarbanes-Oxley Act whistleblower retaliation action arising from Plaintiff Sophia Lewis's protected disclosures regarding alleged corporate fraud and securities violations at American Express Company ("Amex"). Ms. Lewis was employed by Amex from 2014 until her termination on August 20, 2020.

The following summation of the case but is not intended to be exhaustive or all-inclusive as to each element. Beginning in 2018, Ms. Lewis made repeated good-faith reports to Amex management and compliance personnel regarding serious misconduct she witnessed within Amex's Commercial Acquiring Group ("CAG"). Specifically, Ms. Lewis reported:

1. Fraudulent Commission Practices: CAG salespeople, particularly those on a team led by Senior Manager Wiley King, were systematically opening Middle Market Solutions (MMS) business card accounts for companies with less than $4 million in annual revenues, in direct violation of Amex's internal requirements, in order to generate substantially higher commissions.  These practices involved falsifying applications and other deceptive or fraudulent practices.

2. Violations of Corporate Card Application Practices: Sales personnel were submitting non-compliant applications that did not meet Amex's financial verification standards.

3. Managerial Approval of Non-Compliant Applications: Management, including Mr. King, was knowingly approving applications that violated company policies and federal compliance requirements.

4. Systematic Bypass of Financial Verification Standards: The conduct represented a deliberate circumvention of Amex's financial controls

4

designed to prevent fraud and ensure compliance with securities laws and regulations applicable to publicly traded companies.

5. Misuse of Internal Resources to Facilitate Fraud: Company resources were being used to facilitate this fraudulent scheme and/or violate rules, regulations or orders, and/or involved the wires and electronic communications.

6. Conflict of Interest: Mr. King had an undisclosed conflict of interest, as his brother-in-law worked in the same business segment, creating potential for additional fraudulent activity.

On June 7, 2019, Ms. Lewis met with Amex General Counsel Office staff to report Mr. King's fraudulent sales practices and express her fear of retaliation. On September 7, 2019, Ms. Lewis sent a detailed email to Amex's attorney and Human Resources formally complaining of harassment, targeting, and bullying by Mr. King in response to her whistleblowing. On September 26, 2019, Ms. Lewis filed a comprehensive complaint through Amex's EthicsPoint hotline, documenting the fraudulent practices and management's complicity.

Following these protected disclosures, Defendant subjected Ms. Lewis to escalating adverse employment actions in retaliation for her whistleblowing activities:

June 20, 2019: Denial of a promotion for which she was qualified.

November 12, 2019: Suspension from employment claiming she forwarded company emails to her personal account

December 2019/January 2020: Ms. Lewis received the lowest possible annual leadership rating (L4) for 2019, a dramatic decline from her L1 rating in 2018, despite no legitimate change in her performance.

August 20, 2020: Termination of employment.

Plaintiff alleges that these adverse actions were taken in retaliation for her protected whistleblowing activity under SOX and were motivated by an intent to punish her for reporting conduct she reasonably believed constituted violations of federal securities laws and fraud against Amex shareholders.

5

**Defendant:** Plaintiff Lewis, a former employee of American Express Travel Related Services Company, Inc., claims that she was retaliated against for disclosing alleged misconduct within the company. Specifically, she alleges that in 2019, she was denied promotion, suspended, and received negative performance assessments after she reported that American Express employees were submitting credit card applications for corporate customers to be evaluated by internal underwriting that fell below the company's own internal financial guideline, in order to boost their commissions. Lewis filed a complaint with the Department of Labor in December 2019 regarding this alleged retaliation, which was later dismissed. According to Lewis, this retaliation culminated in her termination on August 20, 2020. Lewis filed a second administrative complaint on or about August 24, 2020.

The parties then engaged in discovery including numerous ESI requests from Lewis and productions by American Express. The case then went to a full evidentiary hearing spanning four (4) days before a Department of Labor Administrative Law Judge (the "ALJ"). The ALJ heard testimony from nine witnesses, all of whom testified under oath. Lewis called five witnesses. American Express called four witnesses. Approximately 57 exhibits were admitted into evidence. The right to subpoena witnesses was available to both parties.

After a four-day evidentiary hearing, the ALJ issued an approximately ninety (90) page decision rejecting Lewis's retaliation claims. *The ALJ concluded that Lewis never engaged in any protected activity covered by SOX.* The undisputed evidence, including testimony from every witness and the documentary evidence, establishes that Lewis never had an objective basis to believe that she was complaining about illegal fraud covered by SOX. Rather, Lewis complained that American Express did not follow its own internal guidelines—guidelines which every witness acknowledged were internal guidelines to which exceptions were made as a matter of regular business practice. Lewis's own admissions under oath also established that American Express terminated Lewis because

6

(1) she sent confidential customer information to her personal, unsecured email account; (2) in a manner designed to hide the true content and evade American Express' security screening process for sensitive information; and (3) when questioned about it, she lied to American Express.

There is no evidence supporting Lewis's allegations and no amount of additional discovery will change these facts. Accordingly, American Express intends to file a summary judgment motion.

The key affirmative defense is res judicata and/or collateral estoppel. Other affirmative defenses include after-acquired evidence and unclean hands.

Procedurally, on December 17, 2026, the Ninth Circuit Court of Appeals issued an order granting Defendant's interlocutory appeal.  Defendant is considering a request that the appeal be expedited.

8.    A listing of contemplated motions and a statement of the issues to be decided by those motions;

**Plaintiff:** Plaintiff anticipates she may need to file discovery-related motions around the following potential issues if Defendant opposes or declines to provide responses to her limited discovery requests:

- Scope of discovery regarding Amex's internal investigations and compliance reports

- Evidence regarding other employees' treatment and comparative discipline

- Privilege assertions regarding communications, including with Amex's General Counsel's Office

Production of personnel files, performance evaluations, and commission Records

- ESI (electronically stored information) production and preservation issues

7

Summary Judgment Motion and pre-trial motions.

**Defendant:** Defendant intends to file a motion for summary judgment. The issues to be decided by the Court are whether Plaintiff failed to engage in protected activity under SOX, and even if she did, whether American Express would have terminated her employment even in the absence of having engaged in protected activity.

9. The prospects for settlement, including whether the case is suitable for reference to a United States Magistrate Judge for a settlement conference;

**Plaintiff:** The parties have not engaged in formal settlement negotiations in this forum. The case has been in the preliminary motion practice stage for over one year, with Defendant's Motion to Dismiss on statute of limitations denied and a Motion for Interlocutory Appeal granted in this Court and now appeal pending in the Ninth Circuit.

Given the procedural posture and the parties' divergent positions on fundamental legal and factual issues, Plaintiff believes mediation at this point would not be constructive.

Plaintiff always remains open to good-faith settlement discussions and believes that this case may be suitable for alternative dispute resolution in the future. Plaintiff seeks the following relief:

• Reinstatement to her former position or a substantially equivalent position

• Back pay from the date of termination (August 20, 2020) to the present, including lost wages, benefits, bonuses, and retirement contributions

• Front pay if Defendant proves reinstatement is not feasible or appropriate

• Compensatory damages for emotional distress, reputational harm, and other non-economic losses

• Attorneys' fees and costs pursuant to 18 U.S.C. § 1514A(c)(2)

• Interest on all monetary awards

Plaintiff believes that mediation or a settlement conference may be productive once the parties have been able to complete discovery regarding the merits of the claims and defenses, aiding the parties in developing a more complete understanding of the strengths and weaknesses of their respective positions.

**Defendant:** Given that the ALJ determined after a full evidentiary hearing with sworn witness testimony that Plaintiff did not engage in protected activity under Sarbanes-Oxley and that the Ninth Circuit has granted Defendant's request for an interlocutory appeal on the issue of statute of limitations, Defendant is not willing to settle this matter for any monetary consideration and does not believe the case is suitable for reference to a Magistrate Judge for a settlement conference at this time.

10. The status of any related cases pending before this or other courts;

No related case pending in any other court.

11. A discussion of any issues relating to preservation, disclosure, or discovery of electronically stored information ("ESI"), including the parties' preservation of ESI and the form or forms in which it will be produced;

**At this time, the Parties are not aware of any issues regarding ESI.**

12. A discussion of any issues relating to claims of privilege or work product;

**At this time, the Parties are not aware of any issues. Parties request the entry of a Rule 502 Order.**

13. A discussion of necessary discovery, which should take into account the December 1, 2015 amendments to Rule 26(b)(1) and should include:

a. The extent, nature, and location of discovery anticipated by the parties and why it is proportional to the needs of the case;

**In accordance with the Court's Order, the Parties will engage in limited discovery as specified below. Defendants believe that limited discovery should be in place for the entirety of the case. Plaintiff disagrees and believes that limited discovery should only apply during the pendency of the appeal.**

9

b.        Suggested changes, if any, to the discovery limitations imposed by the Federal Rules of Civil Procedure;

**The Parties agree to waive disclosures during the pendency of the appeal**.

c. The number of hours permitted for each deposition. The parties also should consider whether a total number of deposition hours should be set in the case, such as 20 total hours for Plaintiffs and 20 total hours for Defendants. Such overall time limits have the advantage of providing an incentive for each side to be as efficient as possible in each deposition, while also allowing parties to allocate time among witnesses depending on the importance and complexity of subjects to be covered with the witnesses.

**The Parties agree: (i) Plaintiff may notice the deposition of four (4) witnesses who have not testified previously in connection with the proceedings before the Department of Labor, up to 3 hours/deposition, namely (1) Wiley King; (2)  Julie Tomich; (3) David Rabkin; and (4) Sandra Diaz and Defendant may re-notice Plaintiff's deposition if it deems necessary in light of Plaintiff's discovery, and notice up to two additional depositions.**

**(ii) Written discovery for either side shall be limited five (5) interrogatories and seven (7) RFPs**.

**Defendant:  Defendant believes that these discovery limitations should be in place for the entirety of the pending case, including after resolution of the appeal, as Plaintiff has articulated no reason why she needs other relevant discovery post-appeal.**

**Plaintiff:   Plaintiff understood that the limitations would only applied during the pendency of the appeal, as the only issue that was addressed at oral argument was what should be done while the matter was on appeal. It was clear to the Plaintiff the Court was balancing various factors of what happens with the interlocutory appeal**

10

**pending, not what happens in a standard court proceeding, of preserving evidence while also trying to avoid too much cost for Defendant.  If Defendant's view were correct, then they would be entitled to no discovery, because they did not ask for any discovery at all at oral argument, only requesting it for the first time in an amended case management report.  Further, if Defendant's view were correct, then Plaintiff would seek additional discovery now, not agree to a few depositions, given Sarbanes-Oxley entitles Plaintiffs a de novo review and rights in federal court.**

Proposed deadlines for each of the following events.  In proposing deadlines, the parties should keep in mind that civil trials should occur within 18 months of the filing of the complaint. 28 U.S.C. § 473(a)(2)(B). The Case Management Order will specify trial scheduling up to the final pretrial conference. Once the dates have been set in the Case Management Order, the Court **will not** vary them without good cause, even if the parties would otherwise stipulate to do so. The parties must propose the following:

      a.     A deadline for the completion of fact discovery, which will also be the deadline for pretrial disclosures pursuant to Rule 26(a)(3). This deadline is the date by which all fact discovery must be *completed.* Discovery requests must be served and depositions noticed sufficiently in advance of this date to ensure reasonable completion by the deadline, including time to resolve discovery disputes. Absent extraordinary circumstances, the Court will not entertain discovery disputes after this deadline;

**Defendant believes that these deadlines should be ordered by the Court regardless of the pending appeal.  Plaintiff disagrees and believes deadlines can be set now if full discovery will be allowed while the appeal is pending,  but if only limited discovery is allowed, then only flexible deadlines should be set for the time the appeal is pending, lest the parties run out of time to complete discovery.**

**September 25, 2026**.

11

b.   Dates for full and complete expert disclosures and rebuttal expert disclosures, if any;

**Plaintiff's disclosure of experts: May 29, 2026**

**Defendant's disclosure of experts: July 31, 2026**

**Rebuttal experts: August 28, 2026**

c.   A deadline for completion of all expert depositions;

**September 25, 2026**

d.   A date by which any Rule 35 physical or mental examination will be noticed if such an examination is required by any issues in the case;

**July 31, 2026**

e.   A deadline for filing dispositive motions;

**November 20, 2026**

f.   Case-specific deadlines and dates, such as the deadline to file a motion for class certification or a date on which the parties are available for a *Markman* (patent claim construction) hearing;

**Not applicable.**

g.   A date by which the parties shall have engaged in face-to-face good faith settlement talks;

**July 31, 2026**

h.   Whether a jury trial has been requested and whether the request for a jury trial is contested (if the request is contested, set forth the reasons);

**Plaintiff:** yes, jury trial requested and appropriate

**Defendant:** Plaintiff has requested a jury trial. However, the case should be decided by summary judgement based on the record of the administrative proceedings.

i.      Any other matters that will aid the Court and parties in resolving this case in a just, speedy, and inexpensive manner as required by Federal Rule of Civil Procedure 1.

**Plaintiff:    Guidance and clarification as to the following would be useful. Defendant has noted it intends to file for summary judgment. If Defendant files for summary judgment while the appeal is pending, Plaintiff expects the Court would allow her to resume her full discovery before having to engage in Summary Judgment briefing. Additionally, per Judge Lanza's Order, Plaintiff is limiting her discovery during the pendency of the appeal, but Plaintiff believes if the matter is returned to the District Court post-appeal, the law gives her the right to complete her remaining discovery. But, Plaintiff withheld objection to Defendant's requests for discovery placed for the first time in an Amended Case Management Report in an effort to be fair and reasonable.  Defendant did not explain in any previous filing or in federal court oral argument why it needed discovery (which Plaintiff believes indicates it agreed Defendant understood there would be an opportunity for discovery once the case was returned post-appeal). Defendant now urges the Court to deny any additional discovery because Plaintiff limited herself based on the Court's guidance, and by the same token demands discovery for Defendant that they never requested, discussed, or explained before.**

**Defendant: Defendant disagrees that Judge Lanza's Order limits discovery only during the pendency of the appeal. Defendant understands Plaintiff's previous representations regarding her need for discovery and the Judge's Order concerned the pending matter in its entirety and not just while the matter was on appeal.**

14.     A statement indicating whether the parties would prefer that the Court hold a case management conference before issuing a scheduling order—and, if so, an explanation of why this would be helpful.

**Defendant:** In light of the December 17, 2025,  Ninth Circuit order granting the interlocutory appeal, Defendant believes a case management conference may be helpful to discuss the final scheduling order.

**Plaintiff:** believes a case management conference may aid in necessary scheduling clarifications, especially concern over setting unmovable deadlines in the event the Ninth Circuit takes longer than hoped to decide and given the time Plaintiff would need to complete her remaining discovery once the appeal is complete.

DATED:  December 18, 2025.

JACKSON LEWIS P.C.

By:/*s/ Michael Delikat*
    Amy Gittler
    Jackson Lewis P.C.
    Amy.Gittler@jacksonlewis.com
    -and-
    David Nenni (admitted *pro hac vice*)
    Jackson Lewis P.C.
    David.Nenni@jacksonlewis.com

    Michael Delikat (admitted *pro hac vice*)
    Mark Thompson *(*admitted *pro hac vice*)
    Orrick, Herrington & Sutcliffe LLP
    mdelikat@orrick.com
    mthomspon@orrick.com

    *Attorneys for Defendant American Express Company*

Government Accountability Project

By:_/s/ Stephani Lynne Ayers_____
    Stephani Lynne Ayers, *Pro Hac Vice*

    1612 K St NW Ste 808

14

Washington, DC 20006
813-382-7865
stephania@whistleblower.org
*Attorneys for Plaintiff*